26269.   BEEBE v. BEEBE.

Argued January 11, 1971—Decided January 29, 1971.

*Matthews, Maddox, Walton & Smith, John M. Graham, III,* for appellant.

*Harl C. Duffey, Jr., Robert J. Evans,* for appellee.

NICHOLS, Justice. 1. No Georgia decision directly in point has been cited by counsel for either party and we have found none.

Counsel for the wife cite cases wherein it was held the phrase "until she remarries" would not be construed as meaning "when she enters into ceremonial marriage forbidden by law and thus void," while counsel for the husband cites cases holding that the entering into such subsequent marriage, though void, relieves the first husband from any further obligation to support the wife. For a collection of some of these cases, see 48 ALR2d 296.

Some of the cited cases are based upon statutory law reviving the obligation of the first husband in the event the wife's second marriage is void, others upon statutes permitting alimony from the second "husband" although the marriage is declared to be void, and yet others upon public policy with some courts declaring that the public policy of the State requires the wife is to be supported and since there is no requirement upon the second "husband" to support her the duty reverts to the first husband. Other courts have held that the wife having elected to rely upon another man for support, together with the fact that such act on her part would lead the first husband into a belief that he could undertake obligations and change his life pattern as a result of the wife's second "marriage," which obligations, if undertaken, could place him in an intolerable position if again, through no fault of his own, he were required to undertake the support of his first wife.

Much emphasis is placed on the fact that the wife's "ceremonial marriage" to the second "husband" is void from its inception and that under the decision in *Gearllach v. Odom,* 200 Ga. 350 (37 SE2d 184), no one can claim any rights under such a void marriage contract. However, subsequent to such decision the General Assembly in 1952 (Ga. L. 1952, p. 149) (*Code Ann. Ch.* 53-6), enacted a statutory procedure for obtaining a judgment of annulment in specified cases and providing the effect of such a decree. *Code* § 53-104 also deals with annulments and the effect of chil-

dren born as a result thereof. This latter Code provision declares designated "marriages" void and declares that marriages fraudulently induced or between parties unwilling to contract marriage are void but subsequent consent and ratification of the marriage shall render such marriages valid. Such Code section which has been a part of our Codes since 1868 apparently did not consider the possible validation of marriages between persons unable to contract marriage. However, this court in *Smith v. Reed,* 145 Ga. 724 (89 SE 815, LRA 1917A 492), held that a ceremonial marriage entered into at a time when one of the parties had a living undivorced spouse would ripen into a valid marriage if they continued to live together as husband and wife after the prior marriage was dissolved by the death of the spouse of the first marriage. Accordingly, while the ceremonial marriage may be void at its inception it may under given circumstances ripen into a valid marriage. However, where the original cohabitation was not the result of a ceremonial marriage and was known to them both to be illicit, and agreement to end the illicit relationship and begin anew as husband and wife, after the parties are capable of entering into a marriage contract, is necessary to a valid marriage. Compare *Carr v. Walker,* 205 Ga. 1 (52 SE2d 426).

Thus the distinction between so-called void and voidable ceremonial marriages is more imaginary than real, and the relationship, if continued after the disability is removed, becomes valid in either case.

*Code Ann.* § 56-601, supra, even prohibits the judicial annulment of void marriages where a child has been, or is to be, born of a void marriage, and under such circumstances the parties are limited to the only alternative remedy, divorce. See *Wallace v. Wallace,* 221 Ga. 510 (145 SE2d 546).

Accordingly, the fact that the wife's ceremonial "marriage" could, if continued, develop into a valid marriage upon the removal of the second "husband's" disability, together with the fact that her entering into the ceremonial "marriage" could lead the first husband into an intolerable position if he should again have to undertake her support requires a finding that the judgment of the trial court enjoining the wife from seeking to have an execution issue be affirmed.

*Judgment affirmed, All the Justices concur, except Mobley, P. J., and Hawes, J., who dissent.*