139 N.J. Super. 207 (1976)
353 A.2d 141
SUSAN Q. RICHARDS, PLAINTIFF,
v.
FRANCIS ST. JOHN RICHARDS, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided January 15, 1976.
*208 Mr. William Butler for the plaintiff (Messrs. Hooley, Perselay, Butler & Kelly, attorneys).
Mr. Robert D. Younghans for defendant.
GRIFFIN, J.C.C., Temporarily Assigned.
The issue in this case involves the reinstatement of alimony based on the following undisputed facts. The marriage of plaintiff Susan Richards and defendant Francis Richards was dissolved by a Nevada divorce decree on September 30, 1969. The decree incorporated a support and property rights agreement which provided that defendant was to pay to plaintiff as alimony, "the sum of $175 a month, said payments to continue for her natural life or until she shall remarry."
In July 1972 plaintiff participated in a marriage ceremony with a James J. Kelly. Consistent with the divorce decree defendant at that time ceased making alimony payments. Almost three years thereafter the 1972 marriage was annulled in New Jersey based on a prior undissolved marriage of the purported husband. No support was awarded in connection with the annulment. Plaintiff now seeks to reinstate the alimony from defendant for the period subsequent to the annulment. It is plaintiff's contention that her purported second marriage was void and of no legal effect because of its bigamous nature. As a result she submits that a remarriage never occurred and that defendant must still comply with his alimony obligation.
The alimony provision of the agreement between the parties is in accord with N.J.S.A. 2A:34-25 which has been interpreted by the courts of this State to be mandatory. The courts retain no discretion to allow the wife alimony payments following a subsequent marriage. Ferreira v. Lyons, 53 N.J. Super. 84 (Ch. Div. 1958); Flaxman v. Flaxman, 57 N.J. 458 (1971).
Is plaintiff's purported marriage to Kelly a "remarriage" within the terms of the agreement and the statute? It must be understood that plaintiff's subsequent marriage *209 can only be construed as being void in nature. N.J.S.A. 2A:34-1(a) provides that judgments of nullity may be rendered "in all cases, when: Either of the parties has another wife or husband living at the time of a second or other marriage." In New Jersey a purported marriage such as this is void and not merely voidable. Hansen v. Fredo, 123 N.J. Super. 388 (Ch. Div. 1973).
The case of Minder v. Minder, 83 N.J. Super. 159 (Ch. Div. 1964), involved a mentally infirm plaintiff whose second marriage was annulled on the basis of her incompetence to enter into the bonds of matrimony. The court held that because plaintiff was unable to consent, the marriage was void and the divorced husband's obligation to pay alimony was not terminated. In ruling N.J.S.A. 2A:34-25 inapplicable to void subsequent marriages, the court relied on the historical distinction between void and voidable marriages. Void marriages were regarded as a nullity ad initio, with no attendant rights or obligations. Voidable marriages were traditionally considered valid, but capable of being adjudged a nullity. Applying this reasoning, the court declared plaintiff's void marriage to be of absolutely no legal effect, hence plaintiff had never remarried.
Subsequently, in Flaxman v. Flaxman, 57 N.J. 458 (1971), the Supreme Court had an opportunity to rule on the effect of an annulment of a voidable (as opposed to a void) marriage on the first husband's alimony obligations. It held that the first husband need no longer pay. That decision explicitly declined to rule on the question now before this court, that is, the effect of a wife's void subsequent marriage on the first husband's duty to continue alimony.
In Sharpe v. Sharpe, 57 N.J. 468 (1971), decided the same day as Flaxman, supra, the Supreme Court affirmed the lower court's decision disallowing the revival of payments upon the annulment of the wife's voidable second marriage. There, again, the court made no ruling as to marriages of a void nature.
*210 As mentioned in both the Minder and Flaxman, supra, opinions, decisions in other jurisdictions have refused to allow a revival of alimony payments, regardless of the second marriage's classification as either void or voidable. In Gaines v. Jacobsen, 308 N.Y. 218, 124 N.E.2d 290 (Ct. App. 1954), the court found no further payments to be due from the first husband. This ruling was predicated on the enactment of a statute which provided for a husband to pay alimony to his wife after an annulment as well as after a divorce. The court held that the wife's marriage to her second husband, even though absolutely void, resulted in a termination of any future support obligation by the first husband. Such action by the wife was termed a "remarriage" within the purview of the statute that terminates the divorced husband's duty to make further payments after another marriage by his former wife.
In reaching its decision the Gaines court discussed the case of Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501 (Ct. App. 1929). There the court had held that the first husband's obligation was revived upon the annulment of the wife's second marriage. The court (124 N.E.2d at 293) noted that "at the time of the Sleicher decision it was impossible for a wife to obtain alimony or other support upon annulment of a marriage." To have held otherwise than the court did in Sleicher would, therefore, have deprived the wife in that case of any source of support whatsoever. The court viewed the passage of the statute allowing for alimony upon annulments of marriages to be determinative of the issue presented. Because the wife obtained a right to support from another when she participated in a second marriage ceremony, the court ruled that the first husband should not be held to answer for her future support.
The court further bottomed its decision on pertinent policy considerations. The realities of the situation dictated that both parties fully expected the wife's subsequent marriage to be valid. The defendant should therefore have the right to regard himself as being free from any further financial *211 burden. It would be peculiarly harsh to restrain the first husband in his capacity to assume new obligations. He should be free to possibly remarry "without remaining forever subject to the possibility that his first wife's remarriage would be annulled and the burden of supporting her shifted back to him." Gaines v. Jacobsen, supra at 293.
Subsequent to the Gaines decision the New York Court of Appeals decided the case of Denberg v. Frischman, 24 A.D.2d 100, 264 N.Y.S.2d 114, aff'd, 17 N.Y.2d 778, 270 N.Y.S.2d 627, 217 N.E.2d 675 (1970). There the court held that the rule denying the reinstatement of alimony after either a void or voidable remarriage does not rest solely on the implementation of the statute allowing the wife to seek alimony from the spouse of the annulled marriage. Rather, that holding can be said to be based on policy considerations alone, as both parties expected and relied on the fact that the plaintiff would be obtaining her support from her second husband.
In Berkely v. Berkely, 269 Cal. App.2d 872, 75 Cal. Rptr. 294 (D. Ct. App. 1969), the court ruled against the wife's petition on facts similar to those presented in the instant case. The court found no justification for distinguishing between void and voidable marriages and their effect upon the reinstatement of alimony. For that reason it was held that any marriage of the wife that is subsequently annulled constitutes a remarriage within the meaning of the California statute. See also Fry v. Fry, 5 Cal. App.3d 169, 85 Cal. Rptr. 126 (D. Ct. App. 1970), where the court held that all of the policy considerations applicable to cases denying the revival of alimony after a subsequent voidable marriage apply with equal force to a void second marriage.
The enactment of the amendment to N.J.S.A. 2A:34-23 should dispel all doubts as to the outcome of the issue presented. That amendment, subsequent to the Minder, Flaxman, and Sharpe decisions, provides in part, "In all actions brought for divorce, divorce from bed and board, or nullity, the court may award alimony to either party * * *." The *212 statute makes no distinction between a voidable and a void marriage. The language of the provision clearly provides that in all actions brought for annulment, an alimony award is proper. This court views the enactment of the above mentioned statute as indicating legislative intent that the wife look to her last preceding husband for her continued financial security, regardless of the reasons for the dissolution of that marriage. As was stated in the Gaines decision:
* * * by writing [the statute] into the law, the legislature has chosen, without regard to whether the marriage is void or voidable, to attach to annulled marriages sufficient validity and significance to support an award of alimony, in other words, to serve, the same as any valid marriage would, as the foundation of a continuing duty to support the wife after the marriage is terminated. [124 N.E.2d at 294-295]
This court holds that the remarriage of the spouse receiving alimony (in the absence of an agreement to the contrary) permanently terminates the support obligation. Because of the enactment of N.J.S.A. 2A:34-23, as amended, this decision will not undermine the strong public policy existing in this state of insuring some source of support for spouses of dissolved marriages. Flaxman v. Flaxman, supra, 57 N.J. at 462. It merely eliminates situations capable of resulting in harsh and inequitable results. To hold otherwise would be to sanction the prohibition espoused by the Supreme Court in Flaxman, supra, namely, allowing the plaintiff to select her source of income.
As was stated in Flaxman:
* * * when she enters into a second marriage ceremony, she holds herself out as having remarried and her first husband is entitled to rely upon her new marital status. He may assume that his financial obligations to her have ceased and reorder his own affairs accordingly. This freedom from such obligations may lead him to change his mode of living or even to remarry and establish a new family. We can see no sound reason for treating an annulment any differently from a divorce or death in this regard. [57 N.J. 463]
This court cannot see any reason to continue the disparate treatment of void and voidable marriages. In either *213 case, the reasonable expectations of both the wife and the first husband are that the wife's remarriage will be valid. The first husband should have a right to rely on that expectation. He should not be required to be forever "waiting in the wings" for a possible dissolution of the remarriage of his former wife. Certainly, when a former wife remarries, the divorced husband does not concern himself with any legal distinctions between void and voidable. She has married. He is free. In the interests of fairness, the last previous husband must be the source of the wife's future financial security. For the reasons expressed herein, that portion of plaintiff's complaint seeking a restoration of alimony payments from her first husband is dismissed.