586 S.E.2d 131

**Laurie M. JOYE, Respondent,**

v.

**Theron R. YON, Petitioner.**

**No. 25702.**

Supreme Court of South Carolina.

Heard March 5, 2003.

Decided Aug. 25, 2003.

Thomas E. Elliott, Jr., of Columbia, for Petitioner.

William Yon Rast, Jr., of W. Columbia, for Respondent.

Chief Justice TOAL.

Theron Yon ("Husband") appeals the Court of Appeals' determination that his obligation to make periodic alimony payments was revived after his ex-wife's subsequent remarriage was annulled.

## FACTUAL/PROCEDURAL BACKGROUND

Husband and Laurie Joye ("Wife") were married in 1970, and they divorced 26 years later on October 31, 1996. Husband was required to pay wife periodic alimony payments of $750 per month. On March 23, 1999,[1] wife married Donald Vance ("Vance"), but two months later, she discovered that Vance never divorced his former spouse. Wife immediately filed an annulment action, and the family court judge granted the annulment on September 24, 1999.

Wife filed a contempt action against Husband for his failure to pay alimony arguing that since her subsequent marriage was *void ab initio*, Husband's obligation to make periodic alimony payments never terminated. The judge did not hold Husband in contempt, but he did find Husband's alimony obligation continued and ordered Husband to make the payments retroactively and prospectively.

Husband appealed, and the Court of Appeals affirmed, finding that a second bigamous marriage is void from its inception and is perceived as never having existed. Consequently, husband's alimony obligation never ceased. *Joye v. Yon,* 345 S.C. 264, 547 S.E.2d 888 (Ct.App.2001).

This Court granted a Petition for Certiorari to review the Court of Appeals' decision to uphold the trial judge's finding of Husband's delinquency in paying wife alimony. Husband raises the following issue on appeal:

Did the Court of Appeals err in affirming the family court judge's reinstatement of Husband's alimony obligation?

## LAW/ANALYSIS

Whether an annulment of a remarriage reinstates the payor spouse's periodic alimony obligation is a novel issue of law in South Carolina. In South Carolina, the payor spouse's periodic alimony obligation terminates upon his death, remarriage of payee spouse, or after payee spouse has continuously cohabitated with another for a ninety-day period. S.C.Code Ann. § 20–3–130(B)(1) (Supp.2002).[2]

---

1. Husband's final periodic alimony payment was on March 25, 1999.

2. We note that a recent amendment to S.C.Code Ann. § 20–3–130 (Supp.2002) does not apply to this matter. The amendment added

Courts are split as to how to classify the effect a payee spouse's remarriage and subsequent annulment has on pre-existing periodic alimony payments. They have adopted one of the following rules: (1) the void/voidable approach, (2) the automatic termination approach, or (3) a case by case approach. *See* Carla M. Venhoff, *Divorce or Death, Remarriage & Annulment: The Path Toward Reinstating Financial Obligations from a Previous Marriage,* 37 Brandeis L.J. 435 (1998) (advocating that courts should adopt the void/voidable approach).

Under the void/voidable approach, the courts will determine whether the subsequent marriage was either void *ab initio* or voidable. A subsequent marriage that is void *ab initio* is deemed to never have existed. Thus, states that have adopted the void/voidable approach find that since a void marriage never existed, the payor spouse is not relieved of his periodic alimony obligation. *See Broadus v. Broadus,* 361 So.2d 582, 585 (Ala.Civ.App.1978); *Reese v. Reese,* 192 So.2d 1, 2 (Fla. 1966); *Johnston v. Johnston,* 3 Kan.App.2d 208, 592 P.2d 132, 135 (1979); *Watts v. Watts,* 250 Neb. 38, 547 N.W.2d 466, 470 (1996); *Brewer v. Miller,* 673 S.W.2d 530, 532 (Tenn.App. 1984).[3] A voidable marriage is legally valid until an annulment is granted, and these jurisdictions hold that the prior periodic alimony obligation is terminated upon remarriage. *Id.*

Under the automatic termination approach, a subsequent marriage extinguishes the payor spouse's periodic alimony obligation regardless of the future status of the remarriage. *In re Marriage of Kolb,* 99 Ill.App.3d 895, 55 Ill.Dec. 128, 425

"continued cohabitation" of the supported spouse as an additional ground to terminate periodic alimony payments, S.C.Code § 20–3–130(B)(1) (Supp.2002), and defined "continued cohabitation" as "the supported spouse [residing] with another person in a romantic relationship for a period of ninety or more consecutive days." This section does not apply to this case because the Record shows that Wife was married to Vance for only two months before she filed the annulment action, so she could not have satisfied the ninety-day requirement.

**3.** The following types of marriages in South Carolina are considered void *ab initio:* (1) bigamous marriages, S.C.Code Ann. § 20–1–80 (Supp.2002); (2) same sex marriages, S.C.Code Ann. § 20–1–15 (Supp. 2002); and (3) marriages of minors under the age of 16, S.C.Code Ann. § 20–1–100 (supp.2002).

N.E.2d 1301 (1981). This approach operates under the notion that the payee spouse, who entered into the subsequent marriage, should bear the risk that the subsequent marriage is voided. *Glass v. Glass,* 546 S.W.2d 738 (Mo.App.1977); *Shank v. Shank,* 100 Nev. 695, 691 P.2d 872 (1984); *G. v. G.,* 387 A.2d 200 (Del.Fam.Ct.1977). These courts find that the payor spouse should be able to rely on the expectation that payee spouse's subsequent marriage is not voided due to the actions of payee spouse's subsequent spouse. *See Richards v. Richards,* 139 N.J.Super. 207, 353 A.2d 141 (1976); *McConkey v. McConkey,* 216 Va. 106, 215 S.E.2d 640 (1975). Finally, these jurisdictions reason that the payee spouse's decision to remarry transfers any financial burden from payor spouse to the new spouse. *Beebe v. Beebe,* 227 Ga. 248, 179 S.E.2d 758 (1971).

The third and final approach allows the family court judge to achieve an equitable result to this unique issue on a case by case basis. *See, In re Marriage of Cargill,* 843 P.2d 1335 (Colo.1993); *Peters v. Peters,* 214 N.W.2d 151 (Iowa 1974); Louanne S. Love, *The Way We Were: Reinstatement of Alimony After Annulment of Spouse's "Remarriage",* 28 J. Fam. L. 289 (1990). Under this method, the family court need not adhere to a bright-line rule and can consider relevant factors such as: length of the subsequent marriage, whether the payee spouse receives support and maintenance from the annulled marriage, whether the payor spouse is prejudiced by the revival of alimony payments, whether the subsequent marriage was properly annulled, and any change in the spouses' personal and financial circumstances after the subsequent marriage is annulled. *Cargill,* 843 P.2d at 1343; *see also, Peters,* 214 N.W.2d 151; *In re Marriage of Williams,* 208 Mont. 252, 677 P.2d 585 (1984); Love, *Alimony After Annulment,* 28 J. Fam. L. 289 (1990).

We hold that the case by case approach affords the Court the most appropriate method for resolving this novel issue. Just as the family court employs principles of equity in determining support and maintenance, equitable distribution, and child custody, so should it embrace these same principles in determining whether payor spouse's periodic alimony obligation is revived after payee spouse's subsequent marriage is annulled.

Restricting family courts to the rigid void/voidable approach or the automatic termination approach could produce unjust results. For example, payee spouse remarries, and ten years later, she discovers that her present marriage was bigamous. If the state employs the void/voidable approach, former payor spouse's support and maintenance is revived regardless of the change of circumstances and the amount of time payee spouse had to determine that her second marriage was void *ab initio*. Equity *may* deem this result unfair. Another example would be a payee spouse being fraudulently induced into a subsequent marriage. She quickly discovers the fraud, brings an annulment action, and her subsequent marriage is void. Under the automatic termination approach, the family court judge would be barred from reinstating periodic alimony. Equity *may* also deem this result unfair, as the payee spouse's subsequent marriage was short-lived, and the payor spouse would likely not be prejudiced if he resumed making the alimony payments.[4] A case by case approach provides the family court judge with the tools to avoid these potentially inequitable results.

■ We believe that the *Cargill* factors mentioned above provide a sound basis for a case by case analysis, and since the Record on Appeal contains scant information as to Husband's and Wife's change of circumstances after their divorce, we hold that the case should be remanded to the family court so that the record can be reopened to include evidence to assist the court in employing the *Cargill* analysis. We also hold that regardless of whether the family court determines to reinstate periodic alimony payments or not, Husband has no obligation to pay retroactive alimony to Wife for the time period that Wife was married to her bigamous husband.

---

4. The dissent would adopt the automatic termination approach because the payee spouse's decision to remarry evidences her intent to no longer receive alimony. In addition, the dissent argues the payor spouse could be inconvenienced by the case by case method. We disagree. The new, ninety day cohabitation rule will drastically reduce the time that a payor spouse will be "in limbo." Further, for instances, such as this, where the ninety day rule does not apply, the case by case method will provide an equitable approach to resolving the alimony issue, and the payee spouse will not be subjected to a bright line rule that may have an inequitable result.

## CONCLUSION

We **REVERSE** the Court of Appeals and **REMAND** this case to family court and direct it to apply the case by case approach in analyzing whether to reinstate payor spouse's pre-existing periodic alimony obligation after payee spouse's remarriage was annulled.

MOORE and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion in which WALLER, J., concurs.

Justice PLEICONES:

I agree with the majority that the Court of Appeals erred in adopting the void/voidable approach and therefore agree that its decision should be reversed. However, I disagree with the majority that the case by case approach is the best alternative and would adopt automatic termination as the most appropriate method for terminating the payor spouse's periodic alimony obligation. Therefore, I would not remand the case to the family court.

One of the *Cargill* factors to be considered in the case by case approach is the length of the subsequent marriage. In South Carolina, alimony can be terminated under the ninety day cohabitation statute.[5] S.C.Code Ann. § 20-3-130(B) (Supp.2002). The ninety day cohabitation rule does not require that the couple cohabit while married, only that the "supported spouse reside[ ] with another person in a romantic relationship for a period of ninety or more consecutive days." *Id.*[6] In my opinion, if residing with another in a romantic relationship for ninety days, without being married, terminates alimony, then marrying, regardless of the length of the marriage or whether it was legal, should terminate alimony. The intent of the payee spouse is important. Whether the

---

**5.** Although this statute does not apply in this case because the action was filed in 1999, before the effective date, I note that the ninety day rule will remove most future cases from the ambit of the case by case approach.

**6.** The ninety day rule cannot be defeated by cessation of cohabitation for brief periods for that purpose. Rather, "tacking" of the periods is allowed. S.C.Code Ann. § 20-3-130(B) (Supp.2002).

payee spouse lives in a romantic relationship with another or marries another, the payee spouse enters into the relationship fully aware that periodic alimony will terminate.

There are several policy considerations that, in my opinion, make automatic termination a better rule. The case by case approach seems to imply that a payee spouse would not remarry were it not for the existence of a substitute source of support. I do not agree with this implication. Further, the automatic termination approach provides a bright line rule that is predictable. Under the case by case or void/voidable approach, a payor spouse could conceivably be in limbo for years, assuming that the ninety day rule were not triggered. While inequitable results could obtain for either spouse under any approach, the certainty of the automatic termination approach makes it the most appealing. If either party should bear the risk of uncertainty arising out of entry into a new relationship, it should be the payee spouse. Therefore, I would hold automatic termination is the appropriate rule.

WALLER, J., concurs.