May L. HOLLAND, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education & Welfare, Defendant.

Civ. No. 62–76.

United States District Court
D. Oregon.

Oct. 11, 1962.

Jesse R. Himmelsbach, Jr., Austin Dunn, Baker, Or., for plaintiff.

Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for defendant.

EAST, District Judge.

The plaintiff herein appeals from the final decision of the defendant Abraham A. Ribicoff, which he entered as Secretary above (Secretary) on August 18, 1961, holding that plaintiff is not entitled to receive the benefits provided by the Social Security Act (Act), as amended, Title 42 U.S.C.A. § 402(e), for the widow of William H. Holland (Holland), who died on July 3, 1957.

■ The Secretary has answered by admitting the factual composition as alleged by plaintiff but denying the contended-for legal effect, and has attached the entire record made before him and his department. Plaintiff has moved for a summary judgment in her favor. This Court can examine the Secretary's construction of the Act and "determine its validity or invalidity." Folsom v. Pearsall, 245 F.2d 563, 565 (9th Cir. 1957).

At the time of his death, Holland was the lawful husband of plaintiff and a fully insured individual under the Act, holding Account No. 541 38 8640. The plaintiff remained unmarried until August 24, 1958, when she celebrated a purported marriage ceremony with one Jacob S. Thompson (Thompson) at Baker, Oregon.

On September 20, 1960, the Circuit Court of the State of Oregon for Baker County, having subject matter [1] and personal jurisdiction over plaintiff and sonal jurisdiction over plaintiff and Thompson, duly made and entered its decree decreeing the aforesaid purported marriage "to be held null and void *ab initio*." [2]

But for her purported marriage to Thompson, plaintiff would have been, on attaining the age of 62 on September 30, 1960, entitled to receive the monetary benefits provided by the Act for the widow of Holland. Immediately following the entry of the annulment decree on September 20, 1960, plaintiff made application to the Secretary for those widow benefits. Then followed a hearing before a hearing examiner which resulted in an adverse opinion, a denial of plaintiff's request for review by the Appeals Council, and the Secretary's "final decision." The Secretary adopted the Appeal Council's support of the hearing examiner's contention that, notwithstanding the Circuit Court's decree, plaintiff's purported marriage to Thompson was, in law, voidable only, rather than void. Therefore, having been married to Thompson from July 24, 1958 until the date of the decree on September 20, 1960, the plaintiff had "remarried" within the meaning of the Act.[3] Citing and relying upon Dibble v. Meyer, 203 Or. 541, 278 P.2d 901, 280 P.2d 765 (1955). Is plaintiff to be defrauded and cheated in her remarriage and lose her widow's benefits, too? The Appeals Council's fixity in its above contention lead the Secretary into error and his final decision is invalid.

■■ The plaintiff properly contends that the term "remarried" is to be determined by the law of Oregon, the situs

---

1. Article VII Oregon Constitution § 9; ORS 107.050.

2. The decree contains no findings of fact or conclusions of law, the making of entry of which having been waived by the parties. It appears, however, from the transcript of record 31, that the grounds or basis for the court's decree of annulment of the marriage was fraud on the part of Thompson in inducing plaintiff to enter into the purported marriage.

3. Section 402(e), *supra*, of the Act provides, *inter alia*:

   "(1) The widow * * * of an individual who died a fully insured individual, if such widow * * * (A) has not remarried, * * *

   shall be entitled to a widow's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: she remarried * * *."

of the purported marriage and the decree of annulment which determines and delineates the validity of the plaintiff's purported remarriage, the effect of the decree of annulment, and the married or unmarried status of the plaintiff. Having once determined the status of the plaintiff (whether the "remarried" widow of Holland) under the Oregon law, her eligibility or ineligibility under the Act necessarily follows. Congress intended that federal courts "look to the state law where there is a well developed body of state law and no federal law, as is the situation with regard to domestic relations * * *." Sears v. Austin, 292 F.2d 690 (9th Cir. 1961); Folsom v. Pearsall, supra, 245 F.2d p. 565; see also 17 Am.Jur. Divorce and Separation, § 7; 55 C.J.S. Marriage § 2; In Re Burrus, 136 U.S. 586, 593, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Section 106.030, Oregon Revised Statutes, in effect on the date of the decree of annulment, provides, *inter alia:* .

"* * * [w]hen either party to a marriage is incapable of * * * consenting thereto * * * by * * * fraud, such marriage *shall be void from the time it is so declared by decree of a court having jurisdiction thereof.*" (Italics supplied.)

Section 107.020 Oregon Revised Statutes provides, *inter alia:*

"A marriage shall not be declared void for any of the causes specified in O.R.S. 106.030 *except at the suit or claim of the party * * * upon whom the fraud * * * was*

---

4. "But we are not here dealing with a court of equity; we are dealing with a divorce court. A divorce court is a court of limited jurisdiction, and it enjoys no power whatever except that expressly conferred upon it by statute. We have held many times that proceedings in a suit for divorce are purely statutory, and the powers which the court exercise are the mere creation of statute." Zipper v. Zipper, 192 Or. 568, 574, 235 P.2d 866, 868.

5. This statutory exercise of discretion to void the marriage from the beginning is

---

* * * *practiced.*" [Italics supplied.]

It will be seen that Dibble v. Meyer, supra, is not controlling here. All that can be said of that decision is that it holds that the right of suit under O.R.S. 107.020, supra, does not survive the death of the party to whom the cause of suit or remedy is given. The court's observations as to terminations of voidable marriages is dicta, as nowhere in the opinion is the court dealing with 107.080 Oregon Revised Statutes, which had been in effect for almost 100 years on the date of the decree of annulment being dealt with here.

O.R.S. 107.080, *supra,* provides, *inter alia:*

"When * * * wife claims or pretends that the marriage is * * * voidable, as provided in ORS 106.020 and 106.030, respectively, it may be declared valid and lawful at the suit of the (husband). In such suit the court may, if the pleadings and proof authorize it, declare the marriage *void from the beginning,* or from the time of the decree, or that it is valid * * *." [Italics supplied.]

While the court could not sit as a court in equity or good conscience,[4] it could, pursuant to O.R.S. 107.080, exercise its judicial discretion in voiding the marriage "from the beginning, or from the time of the decree * * *." The Circuit Court had the authority to and did "declare by decree" plaintiff's and Thompson's pretended marriage "void from the beginning."[5] We find that the Latin phrase *"ab initio"* used by the

comparable to applying the doctrine of "relation back" prevailing in California and approved by Folsom v. Pearsall, supra, 245 F.2d at p. 565:

" 'The test for determining the applicability of the doctrine as applied to voidable marriages is whether it effects a result which conforms to the sanctions of sound policy and justice as between the immediate parties thereto, * * * (third persons not here affected).' " [citation omitted.]

The Supreme Court of the State of Oregon has not had this exact question

 

court in its decree means "from the beginning; from the first act; entirely; as to all acts done; in the inception." Black's Law Dictionary, 4th Ed. This declaration and decree of the Oregon court fixes plaintiff's status as having never been married to Thompson and is binding upon the Secretary and this Court.

Folsom v. Pearsall, supra, 245 F.2d p. 567; Yeager v. Flemming, 282 F.2d 779 (5th Cir.1960), citing Folsom v. Pearsall, in each of which cases the widow sought a state court annulment of her voidable marriage induced by fraud. In Yeager the court said, 282 F.2d at p. 781:

"* * * the Connecticut court of competent jurisdiction declared that it had, at the initial hearing, found that the parties, in spite of the purported ceremony of marriage, were in reality never validly married; that no marriage ever existed between the appellant here and Harley Erne Blodgett; and that the purported marriage was, by the nunc pro tunc order, declared to be null and void *ab initio*. It seems to us that the court could not have used any plainer language to indicate that it was holding the marriage not voidable, but void from the very moment it was undertaken. If the purpose and intent of the Connecticut court is to be followed, therefore, we are bound to accept that the marriage was declared to be a complete nullity, to have been erased, and to have no more status or validity than if no act had been performed in connection with it. See Sparks v. United States and Folsom, Secretary, etc., D.C.Vt. 1957, 153 F.Supp. 909 and Folsom v. Pearsall," supra.

 This Court concludes that the plaintiff is entitled to summary judgment setting aside the final decision of the Secretary and remanding the cause to him for the purpose of determining benefits payable under the Act to plaintiff as the unmarried widow of Holland.

Counsel for the plaintiff is requested to submit and serve proposed judgment form, having first properly moved for the substitution of the Honorable Anthony J. Celebrezze as defendant Secretary herein.

---

or any interpretation of ORS 107.080 before it. Therefore, this Court is obliged to anticipate the holding of that court. This Court is quite of the opinion that the Supreme Court of the State of Oregon, if presented with this question today, would hold that ORS 107.080 grants to the Circuit Court the same judicial discretion in fixing the date of the voiding of the marriage that it would have under the foregoing doctrine of "relation back."