MADELINE FLAXMAN, PLAINTIFF-RESPONDENT, v. NATHAN FLAXMAN, DEFENDANT-APPELLANT.

Argued November 23, 1970—Decided February 8, 1971.

*Mr. Gerald T. Glennon* argued the cause for defendant-appellant (*Messrs. Weiner, Weiner & Glennon*, attorneys; *Mr. Gerald T. Glennon* on the brief).

*Mr. Louis Sherman* argued the cause for plaintiff-respondent.

The opinion of the Court was delivered by

PROCTOR, J. The sole issue before us is whether a woman's right to alimony from her former husband under a separation agreement incorporated into a divorce decree is revived by the annulment of the woman's second marriage on grounds which rendered it voidable. The Chancery Division held that the right was revived. 109 *N. J. Super.* 500 (1970). On plaintiff's motion we certified the matter directly to this Court before argument in the Appellate Division.

The facts pertinent to this appeal are not in dispute. Plaintiff and defendant were married and had two children. On June 15, 1966, the parties entered into a separation agreement. The agreement provided, *inter alia,* that the plaintiff

wife retain custody of the two children and that the defendant pay $50 support a week for each child and $169.23 a week for the plaintiff. The agreement contemplated that the plaintiff's right to alimony terminate if she should divorce the defendant and remarry. Thereafter plaintiff instituted a suit for divorce and obtained a judgment nisi on January 31, 1968. The judgment became final on May 1, 1968 and incorporated the separation agreement. Two months later, on July 4, 1968, plaintiff married a Frederick Green. On July 19, 1969, plaintiff's marriage to Green was annulled. The annulment was based on Green's fraud in that he never intended to have children or to consummate the marriage. Defendant refused to reinstate the wife's alimony following the annulment, and his refusal resulted in the present litigation.

The question of what effect the annulment of a second marriage has upon an award of alimony from a first marriage has never been before an appellate court of this state. There is no question but that a valid second marriage extinguishes a wife's right to alimony from her first husband. *N. J. S. A.* 2A:34–25; *Ferreira v. Lyons,* 53 *N. J. Super.* 84 (Ch. Div. 1958). In *Minder v. Minder,* 83 *N. J. Super.* 159 (1964) our Chancery Division held that a second marriage which was void by reason of the wife's mental incapacity did not extinguish her right to alimony from her divorced husband. See also *Cecil v. Cecil,* 11 *Utah* 2d 155, 356 *P.* 2d 279 (1960). A major difference between a void marriage and a voidable marriage is that the latter is treated as valid and binding until its nullity is ascertained and declared by a competent court, whereas the former does not require such a judgment. *Ysern v. Horter,* 94 *N. J. Eq.* 135, 139 (Ch. 1922) ; *Steerman v. Snow,* 94 *N. J. Eq.* 9 (Ch. 1922). Since the second marriage in the present case was voidable rather than void, *Grobart v. Grobart,* 107 *N. J. Eq.* 446 (Ch. 1931), *aff'd* 109 *N. J. Eq.* 129 (E. & A. 1931), *Minder* did not present the precise question which is before us today. The trial court found no distinction between void and voidable

marriages and thus relied on *Minder.* It reasoned that since a judgment of annulment of a voidable marriage relates back and renders the marriage void from the beginning, the judgment of annulment gave a voidable marriage the same effect as a void marriage. 109 *N. J. Super.* at 501.

It has been said, as the trial court here held, that a judgment annulling a voidable marriage relates back and renders the marriage void from the beginning. *Wigder v. Wigder,* 14 *N. J. Misc.* 880 (Ch. 1936). The doctrine of "relation back" is a legal fiction fashioned by the courts to promote justice between the parties to a voidable marriage. See *Sefton v. Sefton,* 45 *Cal.* 2d 872, 875, 291 *P.* 2d 439, 441 (1955); "Comment, Effect of an Invalid Remarriage on Alimony Payments," 24 *Wash. & Lee L. Rev.* 326, 331 (1967). Despite the fiction, voidable marriages have been given legal effect in some cases. For example, a voidable marriage has been given sufficient validity to provide consideration for a gift, *American Surety Co. of New York v. Conner,* 251 *N. Y.* 1, 166 *N. E.* 783 (1929), and to make a remarriage bigamous, *Ysern v. Horter, supra* at 139. Courts have been particularly wary of applying the "relation back" fiction where it might adversely affect the rights of innocent third parties. See *Sefton v. Sefton, supra* at 875, 291 *P.* 2d at 441 and cases cited therein. The decision of whether to apply the fiction in order to revive a wife's right to alimony from her former husband requires an examination of the policies involved.

Of course we recognize that there is a strong policy of insuring some source of support for a wife who obtains a divorce. Generally this support will come from her former husband. However, *N. J. S. A.* 2A:34–25 and most separation agreements as the one in the present case mandate termination of such support upon a wife's remarriage. One of the reasons for termination is that, upon remarrying, the wife obtains a new source of support. This does not mean, however, that termination of the second marriage reinstates support from the first husband merely because support is un-

available from the second husband. We know, for example, that if the remarriage ends in divorce or if the second husband dies penniless, she may not look again to her former husband. See *Gaines v. Jacobsen,* 308 *N. Y.* 218, 223, 124 *N. E.* 2d 290, 293 (1954); *Nelson v. Nelson,* 282 *Mo.* 412, 221 *S. W.* 1066 (1920); *Brandt v. Brandt,* 40 *Or.* 477, 67 *P.* 508 (1902). And there are sound reasons for not allowing her to do so. When she enters into a second marriage ceremony, she holds herself out as having remarried. And her first husband is entitled to rely upon her new marital status. He may assume that his financial obligations to her have ceased and reorder his own affairs accordingly. This freedom from such obligations may lead him to change his mode of living or even to remarry and establish a new family. We can see no sound reason for treating an annulment any differently from a divorce or death in this regard. A husband whose wife enters into a voidable second marriage is no less likely to rely on the validity of that marriage than is one whose former wife enters into a valid second marriage. In the present case it appears that the defendant has remarried and taken on all of the responsibilites of that remarriage. We think that under the terms of the separation agreement as incorporated into the divorce decree and *N. J. S. A.* 2A:34–25, he was entitled to so rely and recommit to other purposes assets previously chargeable to alimony.

Were we to hold otherwise, a husband, whose divorced wife had remarried, could never be certain that the financial responsibility for his former wife would not shift back to him. Moreover, only she and her second "husband" ordinarily would know whether there was cause for an annulment, and the option would be hers either to annul or ratify the marriage. *Grobart v. Grobart, supra.* Thus, where the marriage is voidable — a circumstance of which the former husband is probably not even aware — the marriage nevertheless might continue indefinitely. The former husband's affairs should not be left in limbo subject to the conduct of parties to a relationship of which he has no part.

Another difficulty is that in many cases the wife has the option of obtaining an annulment or a divorce from the second husband. If alimony could be revived by annulling the second marriage, the wife could choose between two sources of support. A divorce could lead to alimony from the second husband while an annulment could reinstate alimony from the first. She should not be given this control. After all, it was she who entered into the second marriage and the subsequent vicissitudes of that marriage should not be attributable to her first husband.

Finally, a former husband would not be a party to the annulment proceedings of the remarriage nor ordinarily would he be in a position to protest them since he could not see beneath the surface of the second marriage and know the validity of the grounds urged for the decree. We do not believe that a husband's alimony obligations should be determined by circumstances over which he has little or no knowledge or control.

The trial court relied on *Sleicher v. Sleicher*, 251 *N. Y.* 366, 167 *N. E.* 501 (1929). There the New York Court of Appeals held that the annulment of a voidable marriage revived the obligation contained in a separation agreement to pay alimony "as long as the wife remains unmarried." It reasoned that the judgment of annulment related back and "effaced [the marriage] as if it had never been." For reasons of equity, however, it refused to allow alimony for the period during which the voidable marriage was in effect.

In the subsequent New York decision of *Gaines v. Jacobsen, supra,* the Court of Appeals reached the opposite result from the court in *Sleicher.* However, it relied to a great extent on interim legislation which authorized an alimony award after a judgment of annulment. *N. Y. Domestic Relations Law, McKinney's Consol. Laws,* c. 14 § 236. But it is now clear that the *Sleicher* holding does not apply even in the absence of such legislation. *Denberg v. Frischman,* 24 *A. D.* 2d 100, 264 *N. Y. S.* 2d 114 (1965), aff'd o. b., 17 *N. Y.* 2d 778, 270 *N. Y. S.* 2d 627, 217 *N. E.* 2d 675 (1966).

In *Denberg* the husband entered into a separation agreement with his wife to pay her support as long as she remained unmarried. The wife remarried, but the second marriage was declared void as bigamous by the Superior Court of New Jersey. New Jersey has no provision for alimony where a marriage is annulled. *Wigder v. Wigder, supra.* Thereafter, the wife demanded resumption of payments from her first husband. The Appellate Division held that the annulment of a second marriage did not revive the right to alimony from the first marriage. It reasoned that *Gaines* was not limited to instances where post-annulment relief against the second husband was available:

"[I]f the Gaines rule were not applicable, many years may pass. The first husband may have remarried, as did the one in the Gaines case, and as did plaintiff husband in this case. New families may have been established on the basis of the seeming duty to support but one family. Innocents, in the way of subsequent wives of such husbands, and the children of such unions may suffer, because the first wives may have made foolish errors in their remarriages. At the same time plain language with the plainest of manifested intention would be distorted to effect an assumed substantial justice based on subsequent events not necessarily within the control or contemplation of the immediate parties to the agreement. Chaos and trouble enough already exist in this troubled field without adding new chaos and new trouble." 24 *A. D.* 2d at 104, 264 *N. Y. S.* 2d at 118.

The court concluded that *Gaines* had expressly discarded *Sleicher* and its opinion was adopted by the New York Court of Appeals. 17 *N. Y.* 2d 778, 270 *N. Y. S.* 2d 627, 217 *N. E.* 2d 675. It should be noted that *Gaines* and *Denberg* both dealt with void rather than voidable marriages as in *Sleicher* and the present case. However, this should make no difference since if the rule denying reinstatement of alimony applies to a void marriage, it should apply *a fortiori* to a voidable marriage. Here we deal only with a voidable marriage.

Some states distinguish between void and voidable marriages and hold that only the latter operate to extinguish the right to alimony. *Evans v. Evans,* 212 *So.* 2d 107 (Fla. Ct.

App. 1968) ; *Bridges v. Bridges,* 217 *So.* 2d 281 (Miss. 1968). On the other hand, many jurisdictions do not make such a distinction and deny a wife's right to alimony even where her second marriage is void rather than merely voidable. *Fry v. Fry,* 5 *Cal. App.* 3d 169, 85 *Cal. Rptr.* 126 (1970) ; *Torgan v. Torgan,* 159 *Colo.* 93, 410 *P.* 2d 167 (1966) ; *Keeney v. Keeney,* 211 *La.* 585, 30 *So.* 2d 549 (1947) ; *Denberg v. Frischman, supra;* see also *Glazer v. Silverman,* 354 *Mass.* 177, 236 *N. E.* 2d 199 (1968). *Contra, DeWall v. Rhoderick,* 258 *Iowa* 433, 138 *N. W.* 2d 124 (1965) ; *cf. Johnson County National Bank & Trust Co. v. Bach,* 189 *Kan.* 291, 369 *P.* 2d 231 (1962). But the plaintiff has called to our attention no case since the overruled decision in *Sleicher,* which holds that alimony is automatically revived after a voidable marriage is decreed annulled. Indeed, all of the recent cases hold that no such right exists. *E. g., Sefton v. Sefton, supra; Evans v. Evans, supra; Gerrig v. Sneirson,* 344 *Mass.* 518, 183 *N. E.* 2d 131 (1968) ; *Bridges v. Bridges, supra.*

█ Plaintiff further urges that reference to federal law in the area of Social Security supports her position. It has been held that the annulment of a second marriage reinstates a wife's rights to Social Security benefits as if she had never remarried. *Holland v. Ribicoff,* 219 *F. Supp.* 274 (D. Or. 1962) ; *Santuelli v. Folsom,* 165 *F. Supp.* 224 (N. D. Cal. 1958) ; *Sparks v. United States,* 153 *F. Supp.* 909 (D. Vt. 1957) ; *Folsom v. Pearsoll,* 245 *F.* 2d 562 (9th Cir. 1957). But as has been recognized by the federal courts, there is a vast difference between alimony payments by a divorced husband and Social Security benefits by the federal government. *Nott v. Flemming,* 272 *F.* 2d 380, 381–382 (2d Cir. 1959) ; *Folsom v. Pearsoll, supra* at 565–566. Basically, Social Security is a program of insurance for a consideration paid designed to provide support on bases which are not identical with those involved where a wife seeks support from her former husband. And, of course, there is no reliance by the federal government on the wife's invalid second marriage.

*Cf. Johnson County National Bank & Trust Co. v. Bach, supra.*

Two other points deserve mention. Although we have no statutory provision allowing alimony after the annulment of a marriage, *Wigder v. Wigder, supra,* it does not necessarily follow that a wife must go remediless. It may be that she could maintain an action for damages against the "husband" of her annulled marriage since it was his fraud which caused her to give up support from her first husband. See 8 *Vand. L. Rev.* 909, 911 (1955) ; *cf. Fung Dai Kim Ah Leong v. Lau Ah Leong,* 27 *F.* 2d 582 (9th Cir. 1928). But this question is not before us here.

Nor are we faced with the question of whether the agreed amount of support for each child should be modified in the light of changed circumstances. It may be that the cessation of their mother's alimony or an increase in their father's income through his employment and investments warrants an increase in the children's support. So, for example, if the support for the children was fixed on the assumption that the mother would be at home to care for their needs, it may be necessary and just to enlarge the support for the children in the light of the new circumstance that the mother is no longer the recipient of any support, and that the needs of the children thus cannot be met unless the sum provided for their support will permit their mother to live with and care for them. This matter is more properly resolved by the trial court after a full hearing of the circumstances.

The judgment of the trial court regarding the reinstatement of alimony is reversed and the matter is remanded for a revision of the children's support payments if such a revision is found warranted.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.