CATHRYN J.C. HICKLIN, APPELLANT AND CROSS-APPELLEE, V. DONNIE D. HICKLIN, APPELLEE AND CROSS-APPELLANT.
509 N.W.2d 627

Filed January 14, 1994.   No. S-91-826.

James R. Welsh, of Bradford, Coenen, Ashford & Welsh, for appellant.

P.F. Render for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

This case arises from Cathryn J.C. Hicklin's petition for dissolution of marriage and Donnie D. Hicklin's cross-petition for annulment. The district court found that the marriage was void and dismissed the petition for dissolution. Cathryn Hicklin (petitioner) appealed to the Nebraska Court of Appeals, which reversed the decision of the district court. Donnie Hicklin (respondent) petitioned this court for further review. We affirm the decision of the Court of Appeals reversing the district court's judgment and remand the cause with directions.

In February 1981, respondent and petitioner began living together in Minnesota. Both parties knew respondent had been and was still married to Sandra Hicklin. In October 1981, respondent and petitioner moved to Nebraska.

On June 9, 1982, respondent and petitioner returned to Minnesota to attend respondent's divorce hearing. On July 4, respondent and petitioner participated in a marriage ceremony in Union Mills, Iowa. After a honeymoon in Iowa, respondent and petitioner returned to Nebraska. Respondent and petitioner's son, Jordan, was born 2 months after the wedding, on September 12. A second child, Jenna, was born on July 23, 1984.

In February 1990, petitioner filed a petition for dissolution of marriage. Respondent filed an answer and cross-petition for

annulment, alleging that he had not been legally divorced from Sandra Hicklin at the time of his purported marriage to petitioner.

At trial, both parties presented evidence regarding their knowledge of respondent's divorce. Respondent stipulated that at the time of the marriage ceremony, he believed he had been legally divorced. Petitioner testified that at the time of the marriage ceremony, she believed that respondent had been legally divorced. Petitioner further testified that prior to respondent's answer and cross-petition, she had never received any indication that their marriage was invalid.

The district court dismissed the petition for dissolution. The court found that under applicable Minnesota law, a decree of dissolution becomes final when entered. The court further found that the decree dissolving Sandra Hicklin and respondent's marriage was entered on July 13, 1982, 9 days after respondent and petitioner's purported marriage. The court concluded that respondent had not been legally divorced from Sandra Hicklin at the time of the purported marriage. Therefore, the marriage between respondent and petitioner was void. See Neb. Rev. Stat. § 42-103 (Cum. Supp. 1992).

The district court then turned to respondent's cross-petition for annulment. Although the district court did not explicitly annul the marriage, annulment clearly would have been proper on the ground that respondent had a spouse living at the time of his purported marriage to petitioner. See Neb. Rev. Stat. § 42-374(3) (Cum. Supp. 1992). The court noted that both parties had attempted to bring themselves within Neb. Rev. Stat. § 42-378 (Reissue 1988). That statute provides:

> When the court finds that a party entered into the contract of marriage in good faith supposing the other to be capable of contracting, and the marriage is declared a nullity, such fact shall be entered in the decree and the court may order such innocent party compensated as in the case of dissolution of marriage, including an award for costs and attorney fees.

The district court held that neither party was "innocent" within the meaning of this statute. The court found that respondent was presumed to know the law of Minnesota and

was not innocent. The court found that petitioner either knew or should have known that respondent was not legally divorced. The court stated that because petitioner had been divorced herself and had attended respondent's divorce hearing, she should have known that a decree of dissolution had to be issued by a court, should have known that no decree was issued on the day of the hearing, and should have demanded to see a decree prior to entering into marriage. The district court thus refused to compensate petitioner "as in the case of dissolution of marriage." See § 42-378.

The district court then turned to issues involving the two minor children. The court granted petitioner custody of both children. The court ordered respondent to pay a fixed amount of monthly child support, to contribute 73 percent of child-care expenses actually incurred, and to provide medical and hospital coverage for the children.

Both parties filed motions for new trial. Both motions were overruled. Petitioner appealed, and respondent cross-appealed. Additionally, respondent filed a motion to dismiss petitioner's appeal on the grounds that she had accepted the benefits of the decree.

The Court of Appeals reversed the trial court's decision. *Hicklin v. Hicklin*, 3 NCA 805 (1993). First, the Court of Appeals denied respondent's motion to dismiss. The court reasoned that petitioner had not accepted the benefits of the decree that she was appealing because the child support payments flowed from respondent's cross-petition for annulment and petitioner was appealing the dismissal of her petition for dissolution. Second, the Court of Appeals held that the district court had abused its discretion by failing to find that petitioner was innocent within the meaning of § 42-378. The Court of Appeals found no evidence to suggest that petitioner knew or should have known that respondent's divorce had not become final. Finally, the Court of Appeals remanded the cause with directions to adjudicate the petition for dissolution pursuant to § 42-378.

Respondent sought and was granted further review by this court. Respondent asserts, in essence, that the Court of Appeals erred (1) in denying his motion to dismiss, (2) in failing

to specifically affirm that the marriage was void, (3) in ordering application of § 42-378, and (4) in failing to consider the assignments of error set forth in respondent's brief on cross-appeal.

An action to annul a marriage sounds in equity. As such, an appellate court reviews annulment cases de novo on the record. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984); *Edmunds v. Edwards*, 205 Neb. 255, 287 N.W.2d 420 (1980). The reviewing court reaches "independent conclusions without reference to the conclusions reached by the trial judge." *Guggenmos*, 218 Neb. at 749, 359 N.W.2d at 91. See, Neb. Rev. Stat. § 25-1925 (Cum. Supp. 1992); *Edmunds, supra*. Where the evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another. *Richdale Dev. Co. v. McNeil Co., ante* p. 694, 508 N.W.2d 853 (1993).

In his first assignment of error, respondent claims that the Court of Appeals erred in denying his motion to dismiss. Respondent argues that because petitioner had accepted the benefits of the decree, her appeal should be barred. Respondent does not specify which benefits petitioner accepted. The only benefits awarded by the decree were child support, a percentage of child-care expenses, and health benefits for the children. We assume these are the benefits which petitioner accepted. We will refer to this combination of benefits loosely as "child support." Petitioner's appeal did not involve issues of child support.

The issue presented, then, is whether a parent's acceptance of child support should bar that parent from appealing other issues in a decree of dissolution or annulment. The answer is no.

In arguing that petitioner's appeal should be barred, respondent relies on our recent case *Shiers v. Shiers*, 240 Neb. 856, 485 N.W.2d 574 (1992). In *Shiers*, the wife had accepted property distributions and was attempting to appeal the amount of child support which she was to receive on behalf of the minor children. After a thorough discussion of the applicable case law, we formulated the following general rule: "[I]n a dissolution of marriage action, one who accepts any part of a judgment in her or his favor forfeits the right to challenge

by appeal any issue but those affecting the interests and welfare of such children as may be involved." *Shiers*, 240 Neb. at 860, 485 N.W.2d at 576. Under this rule, a party to a dissolution action cannot, by accepting the benefits of the decree, waive the right to appeal issues which affect the "interests and welfare" of the children.

The rationale for the *Shiers* rule rests on the notion that the sins of the parents shall not be visited upon their children. A parent acting in his or her own best interests should not adversely affect the interests of the children. See *Reynek v. Reynek*, 193 Neb. 404, 227 N.W.2d 578 (1975) (holding that a parent who accepts property settlement payments may appeal child custody issues because the best interests of the child are at stake).

With this rationale as our guiding principle, we now hold that in an action for dissolution or annulment, a parent may accept child support and yet appeal other issues in the decree. See, *Coley v. Coley*, 128 Ga. 654, 58 S.E. 205 (1907); *Lemon v. Lemon*, 14 Ill. 2d 15, 150 N.E.2d 608 (1958); *Atwood v. Atwood*, 229 Minn. 333, 39 N.W.2d 103 (1949); *Sanford v. Sanford*, 295 N.W.2d 139 (N.D. 1980). To hold otherwise would force parents to choose between accepting child support and prosecuting an appeal. See *Coley*, 128 Ga. at 656, 58 S.E. at 205 ("we do not think it would be within either the spirit or the justice of the law to hold that [a mother] must repudiate [the judgment] entirely, and allow the child to suffer, in order to permit her to except to the refusal of alimony for her"). A parent's acceptance of child support, therefore, does not preclude an appeal from a decree of dissolution or annulment.

In his second assignment of error, respondent claims that the Court of Appeals erred in failing to specifically affirm that the marriage was void. We do not decide whether the Court of Appeals erred in this manner or whether such a failure would constitute error. Rather, we address this assignment of error only to clarify the status of the parties' purported marriage. The trial court found that respondent was not legally divorced from Sandra Hicklin at the time of his purported marriage to petitioner. Neither respondent nor petitioner has challenged this finding. The Court of Appeals found that Iowa law had not

been pled and could not be used to validate respondent and petitioner's union as a common-law marriage. Neither respondent nor petitioner has challenged this finding. Given these two undisputed findings by the lower courts, it is clear that respondent and petitioner's marriage was void. See § 42-103.

In his third assignment of error, respondent claims that the Court of Appeals erred in ordering application of § 42-378, under which an innocent party to a void marriage may be compensated as if the marriage had been valid. We find that the Court of Appeals properly ordered application of § 42-378.

In support of this third assignment of error, respondent first contends that petitioner is not an innocent party within the meaning of § 42-378. An innocent party is one who "entered into the contract of marriage in *good faith* supposing the other to be capable of contracting." (Emphasis supplied.) § 42-378. The meaning of good faith, within the context of this statute, has never been addressed by this court.

In order to determine the proper meaning of good faith, we look to the putative marriage doctrine. This doctrine, which has been adopted in many states either through case law or by statute, closely parallels § 42-378. See Christopher L. Blakesley, *The Putative Marriage Doctrine*, 60 Tul. L. Rev. 1 (1985).

The putative marriage doctrine provides that, when a marriage is declared a nullity, the civil effects of a legal marriage will continue to flow to the parties who contracted the marriage in good faith. *Id.* In other words, a putative spouse will have many of the rights of an actual spouse. See, e.g., *Mabry v. Mabry*, 452 So. 2d 248 (La. App. 1984) (putative spouse is entitled to alimony). The putative marriage doctrine enlists justice and equity to protect those who participate in a "marriage ceremony in the good faith belief that the marriage was valid and proper, when it was actually null due to some impediment." Blakesley, *supra*, at 6.

Good faith is the primary tenet of the putative marriage doctrine. Blakesley, *supra*. Good faith, in the context of a putative marriage, means an honest and reasonable belief that the marriage was valid at the time of the ceremony. See, *Funderburk v. Funderburk*, 214 La. 717, 38 So. 2d 502 (1949);

*Mara v. Mara*, 452 So. 2d 329 (La. App. 1984). Whether a party acted in good faith depends on the facts and circumstances of the case. *Succession of Chavis*, 211 La. 313, 29 So. 2d 860 (1947); *Mabry, supra*. Good faith is presumed; the burden of proof rests squarely on the party charging bad faith. *Brown v. Brown*, 274 Cal. App. 2d 178, 82 Cal. Rptr. 238 (1969); *Funderburk, supra*; *Mara, supra*. Good faith may result either from an error of fact or from an error of law. *Succession of Lynch v. United States*, 17 F. Supp. 674 (W.D. La. 1936) (putative wife erroneously believed that husband's conviction and sentencing to the state penitentiary gave her a divorce); *Succession of Pigg*, 228 La. 799, 84 So. 2d 196 (1955) (putative wife erroneously believed husband could divorce his prior wife, who was in an insane asylum); *Jones v. Equitable Life Assurance Society of U.S.*, 173 So. 2d 373 (La. App. 1965) (putative wife, an ex-mistress, erroneously believed that she could marry her adulterous partner). Accord *Kimball v. Folsom*, 150 F. Supp. 482 (W.D. La. 1957) (adage that "ignorance of the law is no excuse" does not apply to putative marriages).

In the present case, respondent has failed to demonstrate that petitioner acted in bad faith. At trial, respondent presented no evidence whatsoever that petitioner *knew* his divorce had not been finalized at the time of the purported marriage ceremony. Petitioner testified that she believed respondent was free to marry and that until the filing of respondent's answer and cross-petition, she had received no indication that her marriage might be invalid. This testimony was not rebutted; if anything, respondent confirmed petitioner's testimony by stipulating that he, too, had believed he was free to marry.

The district court found that petitioner *should have known* that respondent's divorce had not been finalized at the time of the purported marriage ceremony. The court reasoned that because petitioner attended respondent's divorce hearing, petitioner should have inquired as to the date on which respondent's divorce would become final. We are unwilling to place this burden on petitioner or one in her position. Although a party cannot close his or her eyes to suspicious circumstances, attending a divorce hearing does not trigger a duty to inquire.

Cf. *Funderburk, supra* (putative wife could not be charged with knowledge that her husband's divorce decree was void); *Howard v. Ingle*, 180 So. 248 (La. App. 1938) (putative wife was not required to question husband about his domestic past in order to uncover ex-wife from whom husband had not been divorced); *Tonti v. Chadwick*, 1 N.J. 531, 64 A.2d 436 (1949) (when husband had obtained a mail-order Mexican divorce in which he had no confidence, husband had duty to inquire as to validity of his own divorce), *overruled on other grounds, Kazin v. Kazin*, 81 N.J. 85, 405 A.2d 360 (1979); *Walker v. Walker's Estate*, 136 S.W. 1145 (Tex. Civ. App. 1911) (when woman's husband asserted that he had divorced her and when divorce records were located in the town in which woman resided, woman had duty to inquire as to validity of her own divorce).

The district court also found that "because [petitioner] was past her 7th month of pregnancy she was willing to overlook the issuance of a Decree in order to give the child a name." This finding is wholly unsupported by the evidence. We are mindful that the trial court observed and heard the witnesses. Nevertheless, such conjecture, founded on disbelief of a witness, cannot replace the proof required to rebut a presumption of good faith. See *Succession of Pigg, supra*.

We hold that petitioner was innocent within the meaning of § 42-378. The Court of Appeals properly determined that petitioner acted in good faith when she contracted marriage with respondent.

Respondent next contends that even if petitioner is innocent, § 42-378 does not apply. Respondent argues that § 42-378 only applies when one party is innocent and the other party is not innocent. Respondent further argues that if petitioner is innocent, he is likewise innocent, and the statute does not apply.

Respondent relies upon our decision in *Randall v. Randall*, 216 Neb. 541, 345 N.W.2d 319 (1984). In *Randall*, we held that neither the husband nor the wife was innocent and that § 42-378 did not apply. Simply stated, *Randall* does not address the issue at hand.

Respondent's argument runs contrary to the plain language of the statute, the purpose of the statute, and persuasive authority from other jurisdictions. First, the plain language of

the statute refers only to an innocent party; the statute does not mention or require a noninnocent party. Second, the purpose of the statute is not to punish a guilty party but to protect an innocent party. See *Lee v. Hunt*, 483 F. Supp. 826, 842 (W.D. La. 1978) ("equity demands that innocent persons not be injured through an innocent relationship"). Finally, jurisdictions which follow the putative marriage doctrine have held that the doctrine applies when one or both of the spouses are innocent. See, *Succession of Chavis*, 211 La. 313, 29 So. 2d 860 (1947); *Whaley v. Peat*, 377 S.W.2d 855 (Tex. Civ. App. 1964).

We hold that § 42-378 applies when one or both of the parties are innocent. The Court of Appeals properly ordered application of § 42-378.

In his fourth assignment of error, respondent claims that the Court of Appeals erred in failing to consider issues raised in his brief on cross-appeal. The Court of Appeals did not address these issues, finding that they would be addressed by the district court on remand. We agree.

In summary, we find that the Court of Appeals acted properly in denying respondent's motion to dismiss, in finding that the purported marriage was void, and in ordering application of § 42-378. We affirm the decision of the Court of Appeals reversing the decision of the district court. We remand the cause with directions to grant the petition for annulment and adjudicate the cause pursuant to § 42-378.

AFFIRMED AND REMANDED WITH DIRECTIONS.

SHANAHAN, J., not participating.