JEFFREY CARTER WATTS, APPELLEE, V. VICTORIA LACHELL WATTS, NOW KNOWN AS VICTORIA LACHELL KILGORE, APPELLANT.

547 N.W.2d 466

Filed May 10, 1996. No. S-94-545.

Michael F. Pistillo, of Pistillo & Pistillo, P.C., for appellant.

Gregory A. Pivovar for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

On August 6, 1993, the district court for Sarpy County entered an order dissolving the marriage of Victoria Lachell Watts, now known as Victoria Lachell Kilgore, and Jeffrey Carter Watts. The divorce decree ordered Watts to pay alimony to Kilgore for a period of 5 years but also provided that alimony would cease upon Kilgore's remarriage. Within 6 months of the decree, on December 16, 1993, Kilgore participated in a marriage ceremony. Watts immediately stopped making alimony payments. Under the laws of the State of Nebraska, Kilgore's second marriage was void because the ceremony was conducted during the 6-month waiting period after her divorce from Watts. Kilgore's putative second husband left her within 3 months of the marriage ceremony. Kilgore then filed a garnishment action in the district court for Sarpy County seeking to collect unpaid alimony from Watts. Kilgore asserted that since her second marriage was void and of no legal effect, Watts had not been relieved of his obligation to pay alimony under the divorce decree. Watts requested a hearing regarding the garnishment and asserted that his obligation to pay alimony had been terminated. The district court held that although Kilgore's second marriage was void, the void marriage nonetheless terminated Watts' alimony obligations. The district court stated that Kilgore might have remedies against her putative second husband. The court quashed the garnishment summons and ordered that its own prior divorce decree be modified to terminate alimony. Kilgore appeals. We reverse the order of the district court quashing the summons and modifying the divorce decree.

## BACKGROUND

The facts are brief and uncontested. Watts and Kilgore were married on October 10, 1981. The parties are the parents of

four minor children. After more than 11 years, Jeffrey Watts filed for a divorce in the district court for Sarpy County. The matter was heard before the court on June 15, 1993. The divorce decree dissolving the parties' marriage was entered August 6, 1993.

The court adopted the property and custody agreement of the parties in its decree. Joint custody of the children was awarded. Watts was ordered to pay $300 in child·support per month. Alimony was awarded "in the amount of $250.00 per month commencing on [September 1], 1993, and continuing for a period of 60 months thereafter or until either [party] shall die or until [Kilgore] shall remarry . . . ."

On December 16, 1993, Kilgore participated in a marriage ceremony with William Metoyer. (Metoyer is referred to as "William Montoya" in the bill of exceptions.) Kilgore testified that she believed that her divorce became final 6 months after the date of the June 15 hearing. Kilgore believed that she had entered into a valid second marriage, and she thereafter lived with Metoyer as husband and wife. When Metoyer learned that the marriage was in fact void, he ended his relationship with Kilgore. Apparently, the parties discovered that the second marriage was void in or around March 1994, but the exact date is not disclosed in the record.

Watts had stopped making alimony payments in January 1994. In April, Kilgore filed a garnishment affidavit and praecipe and asserted $750 in unpaid alimony was due. The record indicates that a garnishment summons and interrogatories were served upon the garnishee, Watts' employer. The record does not contain the garnishee's answer.

Neb. Rev. Stat. § 25-1011(1) and (2) (Reissue 1995) requires that notice be served upon the judgment debtor when a garnishment summons and interrogatories are served upon the garnishee. Section 25-1011(4)(c) provides that the judgment debtor may request a hearing if the debtor believes the amount is not owed on the judgment.

The record indicates that Watts received a notice to the judgment debtor. Such notice informed Watts that a garnishment summons had been served upon his employer and that he had the right to request a hearing if he did not believe that he

owed the judgment. Watts timely requested a hearing regarding the garnishment proceeding.

The matter was heard on April 26, 1994. At the hearing, Kilgore was the only witness. Kilgore admitted that she had participated in a marriage ceremony in December. Kilgore stated that her attorney had informed her that she had to wait 6 months after the June 15 hearing to remarry.

The district court held that Kilgore's participation in the marriage ceremony constituted a marriage, albeit a void marriage. Since the divorce decree provided that alimony terminated upon remarriage, the district court ordered that the garnishment summons for the unpaid alimony be quashed because the summons was for a debt not owed. The district court also ordered that the divorce decree be modified to provide for the termination of alimony as of January 1, 1994. The court suggested that Kilgore might have some remedies against Metoyer.

Kilgore timely appealed the order to the Nebraska Court of Appeals. We moved the appeal to our docket.

## ASSIGNMENTS OF ERROR

Kilgore asserts that the district court erred in failing to hold that her second marriage was void and therefore without legal effect. Kilgore also asserts that the district court erred in failing to find that a void marriage standing alone does not terminate an alimony award. Further, Kilgore asserts that the district court erred by terminating alimony accrued prior to the date of its order eliminating her right to receive alimony. Finally, Kilgore asserts that the district court erred by modifying its prior award and order to pay alimony without good cause shown.

## STANDARD OF REVIEW

Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of a garnishment hearing judge have the effect of findings by a jury and, on appeal, will not be set aside unless clearly wrong. *Koterzina v. Copple Chevrolet*, 249 Neb. 158, 542 N.W.2d 696 (1996); *Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995); *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 235 Neb. 207, 454 N.W.2d 671 (1990).

On questions of law, an appellate court has an obligation to reach its own independent conclusions. *Koterzina v. Copple Chevrolet, supra*; *Davis Erection Co. v. Jorgensen, supra.*

## ANALYSIS

In Nebraska, a divorce decree becomes final 6 months after it is entered. Neb. Rev. Stat. § 42-372(1)(b) (Reissue 1993). During this 6-month waiting period, the matrimonial tie between the parties is not dissolved. *Randall v. Randall*, 216 Neb. 541, 345 N.W.2d 319 (1984); *Copple v. Bowlin*, 172 Neb. 467, 110 N.W.2d 117 (1961).

In this case, the divorce decree was entered on August 6, 1993, and therefore was not final until February 7, 1994. Marriages are void when either party has a husband or wife living at the time of the marriage. Neb. Rev. Stat. § 42-103 (Reissue 1993). Kilgore, being then married, was not free to enter into a marriage on December 16, 1993, and therefore, the ceremony on that date resulted in a void marriage.

The question before us is whether Kilgore's right to alimony from Watts under their divorce decree was terminated upon Kilgore's entry into a void marriage. Some courts have held that a void marriage has no effect on a former husband's obligations, while others have concluded that a void marriage terminates those obligations. See Annot., Annulment of Later Marriage as Reviving Prior Husband's Obligations Under Alimony Decree or Separation Agreement, 45 A.L.R.3d 1026 (1972).

We have previously addressed the issue of whether alimony can be revived after a *voidable* marriage was annulled. In *Ballew v. Ballew*, 187 Neb. 397, 191 N.W.2d 462 (1971), an ex-wife sought to have her alimony reinstated after her subsequent marriage was annulled. The second marriage was voidable, apparently because it was based on misrepresentation. Essentially, the ex-wife's argument was that a provision in the divorce decree terminating alimony upon her remarriage was not effective unless the remarriage was valid. Since her subsequent marriage was annulled, the ex-wife argued that the annulment related back to her second marriage and made it void, as if it had never occurred. We said:

The issues have been considered by many courts. The most common basis for decision in this area seems to turn on the distinction between a void and a voidable remarriage. The great majority of courts have held that a wife's voidable remarriage terminates the prior husband's obligation for alimony, and that the termination of a voidable second marriage does not reinstate a right of support from the first husband merely because support is unavailable from the second [husband]. . . . Some states have held that where the second marriage was void as distinguished from voidable, the remarriage did not terminate the obligation of the first husband for alimony.

*Id.* at 399, 191 N.W.2d at 464.

"When a marriage is void it is (for most purposes) as if no marriage had taken place." *Peters v. Peters*, 214 N.W.2d 151, 155 (Iowa 1974). "A major difference between a void marriage and a voidable marriage is that the latter is treated as valid and binding until its nullity is ascertained and declared by a competent court, whereas the former does not require such a judgment." *Flaxman v. Flaxman*, 57 N.J. 458, 461, 273 A.2d 567, 569 (1971).

In Nebraska, we have generally refused to give a void marriage any legal effect. See, *Randall v. Randall, supra*; *Copple v. Bowlin, supra*. Although the parties in these cases had participated in marriage ceremonies, they did not attain a married status due to some defect which caused their marriages to be void.

"A provision for termination of alimony upon remarriage of the recipient requires a *valid* remarriage . . . ." (Emphasis supplied.) *Bowman v. Bowman*, 163 Neb. 336, 343, 79 N.W.2d 554, 560 (1956). Since Kilgore's 3-month marriage to Metoyer was a legal nullity, the void marriage standing alone cannot operate to terminate Watts' alimony obligations under the divorce decree. We leave for another day deciding what effect, if any, a void marriage which lasted for a longer time period would have on a prior husband's alimony obligations.

## CONCLUSION

The order of the district court modifying the divorce decree by terminating Watts' alimony obligation and quashing Kilgore's garnishment summons is reversed.

REVERSED.

LANPHIER, J., concurring.

The majority concludes that because Kilgore's putative second marriage was void, it has no legal effect and does not terminate Watts' alimony obligation. The majority overlooks this court's recent adoption of the putative marriage doctrine.

> The putative marriage doctrine provides that, when a marriage is declared a nullity, the civil effects of a legal marriage will continue to flow to the parties who contracted the marriage in good faith. . . . In other words, a putative spouse will have many of the rights of an actual spouse. . . . The putative marriage doctrine enlists justice and equity to protect those who participate in a "marriage ceremony in the good faith belief that the marriage was valid and proper, when it was actually null due to some impediment."

*Hicklin v. Hicklin*, 244 Neb. 895, 901, 509 N.W.2d 627, 631 (1994) (quoting Christopher L. Blakesley, *The Putative Marriage Doctrine*, 60 Tul. L. Rev. 1 (1985)).

In *Hicklin*, the putative wife entered into the marriage in good faith. The marriage lasted approximately 8 years and produced two children. When the marriage ended, the putative husband sought to avoid any responsibility to provide spousal support solely because the marriage was void. We held that although the parties' marriage was void, the putative wife was entitled to be compensated as in the case of the dissolution of marriage under Neb. Rev. Stat. § 42-378 (Reissue 1993) and in accord with the putative marriage doctrine.

Therefore, *Hicklin* provides that void marriages do have a legal effect between the parties contracting the marriage if the marriage was entered into in good faith by at least one putative spouse. The void-voidable marriage distinction, relied upon by the majority, is no longer valid in that context. I question whether the void-voidable marriage distinction should be given any validity in this context. Further, the majority opin-

ion undermines our holding in *Hicklin*, which was mandated by statute.

In a similar context, the Supreme Court of Iowa, in questioning whether alimony obligations are terminated by the ex-wife's participation in a void marriage, rejected the use of the void-voidable marriage distinction as positing an inflexible rule in derogation of ordinary principles of equity. *Peters v. Peters*, 214 N.W.2d 151 (Iowa 1974).

The draconian effect of an inflexible rule can been seen in a review of Nebraska cases.

For example, in *Copple v. Bowlin*, 172 Neb. 467, 110 N.W.2d 117 (1961), a woman participated in a marriage ceremony 1 day before her divorce from her first husband became final. The second marriage lasted 6 years and produced one child before the husband died in a work-related accident. Since the marriage was void, the woman was not entitled to workers' compensation benefits.

In another case, the voidness of her marriage deprived a woman of any right to alimony or a portion of the marital estate despite the fact that the putative marriage had lasted for approximately 20 years. *Randall v. Randall*, 216 Neb. 541, 345 N.W.2d 319 (1984). However, even under the putative marriage doctrine, the woman would not have been granted any relief, because she knew her husband's 6-month waiting period had not expired when she participated in a marriage ceremony in Mexico with him. Therefore, the essential element of good faith required by *Hicklin* would not have been met.

In *Peters v. Peters, supra*, the Iowa Supreme Court, after rejecting the inflexible void-voidable distinction, adopted a practical approach which begins with an inquiry into the intent of the dissolution court as revealed by the divorce decree. The Iowa court would also examine equitable and public policy considerations. I believe that the *Peters* approach is in accord with the direction this court took when it adopted the putative marriage doctrine in *Hicklin v. Hicklin, supra*.

Although I respectfully depart from the majority for the foregoing reasons, I concur in the result as to modification of the divorce decree. The scant evidence before us in this case

suggests that Kilgore participated in the ceremony with Metoyer with the good faith belief that she was free to contract a valid marriage. It is therefore possible under the putative marriage doctrine that Kilgore has some remedies against Metoyer. However, the proceeding below was a garnishment action, and the issue of Kilgore's remedies against Metoyer was not before the court—more importantly, neither was the issue of modifying the divorce decree between Watts and Kilgore.

GERRARD, J., joins in this concurrence.