**William W. OVERTON, Appellee,**

v.

**Natalie Elizabeth OVERTON, Appellant.**

**No. 50300.**

Court of Appeals of Oklahoma,
Division No. 2.

March 21, 1978.

Released for Publication by Order of
Court of Appeals April 17, 1978.

John Munkacsy, Lawton, for appellee.
Mark R. Smith, Lawton, for appellant.

BRIGHTMIRE, Judge.

When the parties divorced on January 2, 1974, the man was required to pay, among other things, $57,600 "support alimony" to his former wife at the rate of $400 a month starting three years later on January 1, 1977. In line with statutory requirements [1] the court specified that the payments would terminate on the woman's death or upon

---

1. 12 O.S.1971 § 1289 which reads in pertinent part:

"(b). In any divorce decree . . . which provides for periodic alimony payments, the

her remarriage "unless the defendant can make a proper showing within ninety (90) days of the date of such remarriage that said support is still needed and that circumstances have not rendered payment . . inequitable."

 The defending woman remarried October 22, 1975 and within 90 days thereafter made no effort to show that support would still be needed. The following August the man moved the court to judicially terminate the alimony order. He did and the woman appeals saying this was error and that the court should have held that the 90 day show-need period contemplated by 12 O.S.1971 § 1289 did not begin to run until commencement of support alimony payments on January 1, 1977.

The argument is not persuasive. In the first place we are quite sure an atypical situation like we have here never occurred to the legislature when it passed § 1289. What the lawmakers had in mind was the usual situation where support alimony payments would begin as soon as the divorce decree ended the husband's marital maintenance obligation. The legislation rested on the assumption that ordinarily a woman would no longer need to be supported by her former husband if she remarried because of the new husband's obligation to support her. Just in case, however, the unforeseeable occurred and the later husband for some reason could not support her, the statute empowered the court to grant the woman post-remarriage relief but only during a three month period. The emphasis of the statute is on the existence of an

alimony recipient's need for support during the immediate post-remarriage period. If under normal circumstances, for example, economic disaster does not descend upon the woman until four months after remarriage the court is powerless to reinstate an earlier terminated alimony provision.

Here commencement of the support order payments was delayed because, apparently the court also awarded the woman $15,600 in lieu of property division payable in monthly installments of $600 and $400 over a period of 36 months. Thus it appears that the woman had enough money to support herself by virtue of the property division award and would have no need for further support before January 1, 1977. The parties do not complain about the order and we can find no fault with it.

As we said, the statute's unusual grant of post-remarriage relief is a concession to the remote chance of unusual circumstances. Wisely the lawmakers limited it timewise. The statute requires a showing of need during a specified limited period—a period linked to the new marital adventure and not with what might be the need six months, a year or five years thereafter. The fact that in this case support alimony payments were not required to be made at the time appellant remarried is therefore immaterial. What appellant actually wants the court to do is to judicially amend the statute to allow her 528 days or 17 months after remarriage to file a show-need application because under the circumstances it would have been impossible for her to have shown support need within three months after her remarriage. Such a period was

court, at the time of entering the original decree, only, may designate all or a portion of each such payment as support, and all or a portion of such payment as a payment pertaining to a division of property. Upon the death of the recipient, the payments for support, if not already accrued, shall terminate, but the payments pertaining to a division of property shall continue until completed; and the decree shall so specify. The payments pertaining to a division of property shall be irrevocable. . . . The court shall also provide in the divorce decree that any *such*

*support payments shall terminate after remarriage* of the recipient, *unless the recipient can make a proper showing that said support is still needed* and that circumstances have not rendered payment of the same inequitable; provided, however, that unless the recipient shall commence an action for such determination *within ninety (90) days of the date of such remarriage,* the court shall, upon proper application, order the support judgment terminated and the lien thereof discharged." (emphasis ours)

never contemplated by the legislature. We decline the invitation to legislate.

Presumably appellant's decision to remarry when she did was voluntary. Certainly it was made with knowledge that it could operate to terminate her alimony award.

We affirm the trial court's holding that under the circumstances it did.

Affirmed.

NEPTUNE, P. J., and BACON, J., concur.