**Carolyn Ann KILDOO, Appellee.**

v.

**Edward A. KILDOO, Appellant,**

No. 67791.

Supreme Court of Oklahoma.

Jan. 17, 1989.

As Corrected Feb. 22, 1989.

Don Cooke, Oklahoma City, for appellant.

R.L. Buckelew, Buckelew & Klingenberg, Oklahoma City, for appellee.

ALMA WILSON, Justice:

The case at bar presents a single issue, which is one of first impression. Is an ex-wife entitled to be reinstated to support alimony provided by her ex-husband after she has entered into a second marriage which was subsequently annulled on the grounds of fraud on the part of both parties? We answer that she is not.

The appellant and appellee were married on October 2, 1953, and were divorced January 31, 1980. That decree was modified

on November 1, 1985, because the original decree had failed to set support alimony at a sum certain. The modified decree provided for a total sum of $38,800.00, with $10,000.00 to be paid within sixty days from the date of the order, and the sum of $28,000.00 to be paid at the rate of $400.00 per month beginning November 15, 1985, until paid in full. The support alimony payments were made terminable upon death, remarriage, or co-habitation according to Title 12, Section 1289.

On May 25, 1986, the appellee remarried. On August 6, 1986, she filed for an annulment alleging that misrepresentations were made by both parties which were relied upon and were major factors for both parties entering into their marriage contract. Her new husband signed a Waiver of Service of Summons and General Entry of Appearance, in which he consented that the cause be heard by the trial court without further notice to him in accordance with the terms of the petition. On August 20, 1986, the trial court found that the marriage was voidable and granted the annulment for the reasons stated in the petition.

The appellant filed a motion to terminate support alimony on September 26, 1986, alleging that the appellee had remarried and that the appellant had continued to send support payments during June, July, and August of 1986, as he had no knowledge that she had remarried. After a hearing on the motion, it was denied by the trial court.

This Court has previously held that when a marriage is ended by a decree of annulment, the grounds are usually those that apply to the cancellation of contracts, but that the marriage relationship is of such public concern that courts must scrutinize actions to annul marriages to discern their probable effect upon the public as upon the individual parties. *Blunt v. Blunt*, 198 Okl. 138, 176 P.2d 471, 472 (1947). The case at bar is one in which both parties agreed to an annulment based upon "misrepresentations." The equitable basis for such an annulment is "fraud." Agreed annulments grounded upon fraud by both parties as a basis for receiving alimony

payments from a previous spouse is a cause for concern to this Court.

The appellee in the case at bar was in a position to choose between two sources of support. Under Oklahoma law, fraud is grounds for either an annulment or a divorce. Title 12 O.S.1981, § 1271 (Sixth) reveals that "Fraudulent contract" is one of the grounds for divorce. In the case of *In re Mo-se-che-he's Estate*, 188 Okla. 228, 107 P.2d 999, 1003 (1940), "fraud" was given as one of the grounds for annulment in a court of equity. This Court cited 38 C.J. *Marriage* § 121 (1925) with approval:

[A] court of chancery, in the exercise of its ordinary powers, and without the authority of statutes may take jurisdiction of a suit to annul a marriage where the ground alleged is one upon which equity gives relief in respect to contracts generally ... in case of *fraud*, error, duress, mental incapacity, or want of consent generally.

(Emphasis added. Material quoted above now found in 55 C.J.S. *Marriage* § 52 [1948].) Therefore, although appellee could have chosen to divorce her second husband, she chose instead to seek an annulment. Where a party is in a position to choose between either divorce or annulment, that party can choose which of two parties the court will make responsible for support alimony, and thereby shifts the support liability back to the party with superior finances.

Concerning revival of alimony in the case of annulled marriages where the annulment was based upon fraud, the majority view appears to be that alimony will not be reinstated. We believe that such a holding is based upon sound reasoning. As stated in *Gaines v. Jacobsen*, 308 N.Y. 218, 124 N.E.2d 290, 294 (1954): "The interests of justice require ... that, as between successive husbands, the wife look to the last one for support, and, certainly, that she be given neither two sources of support nor the ability to choose between her first and second husbands for the more profitable." In *Chavez v. Chavez*, 82 N.M. 624, 626, 485 P.2d 735, 737 (1971), the Supreme Court of New Mexico cited *Flaxman v. Flaxman*,

57 N.J. 458, 273 A.2d 567, 569 (1971) with approval stating:

> In Flaxman, in conjunction with a scholarly review of the authorities, the court, in holding that alimony was not revived, pointed out that the first husband is entitled to rely on the wife's remarriage and reorder his personal and financial affairs accordingly. Otherwise a husband whose wife has remarried could never be certain that financial support for his former wife would not shift back to him. His affairs would be in limbo. By the same token, the remarried wife has the option of seeking annulment or divorce (and alimony) from the second husband. If annulment revived alimony from the first husband, she would be in a position to choose between two sources of support. She ought not have this control, the vicissitudes of the second marriage not being attributable to the first husband.

*Flaxman* adds that a former husband is not a party to an annulment proceeding, nor is he in a position to protest the annulment since he cannot see beneath the surface of the second marriage and know the validity of the grounds urged for the decree. The court states that a husband's alimony obligations should not be determined by circumstances over which he has little or no knowledge or control. *Flaxman*, 273 A.2d at 570. Even though there is a strong policy of insuring some source of support for a wife who obtains a divorce, this does not mean that termination of the second marriage reinstates support from the first husband merely because support is unavailable from the second husband. If the remarriage ends in divorce or if the second husband dies penniless, the ex-wife may not look again to her former husband. *Flaxman*, 273 A.2d at 569.

Our statutes do not prohibit the continuation of support alimony after remarriage. Title 12 O.S.Supp.1987, § 1289(B) provides in part:

> Upon proper application the court shall order payment of support terminated and the lien discharged after remarriage of the recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable, provided the recipient commences an action for such determination, within ninety (90) days of the date of such remarriage.

■ Because our statutes provide for a continuation of support alimony after remarriage under some circumstances, it also follows that a remarriage and subsequent annulment of that marriage does not automatically cause the support alimony payments to terminate. However, in order for the payments to continue under this statute, the recipient must commence an action within ninety days of the recipient's remarriage. The recipient is not entitled to an extension of the ninety day period even if the recipient misconstrues the divorce decree. *Acker v. Acker*, 594 P.2d 1216, 1220 (Okla.1979). The appellee did not attempt to extend the alimony payments pursuant to § 1289(B). Appellee argues that she was not a legally sophisticated woman, was aware from the onset of the annulled marriage that it was invalid, and obtained an annulment within the ninety day period. Nevertheless, the implications of *Acker* suggest that a misunderstanding of the legal consequences of the failure to commence such an action will not serve to toll the ninety day period.

■ We hold that where the recipient of support alimony remarries, and where the divorce decree provides for termination of that support upon remarriage, that unless the recipient applies for a continuation of support pursuant to 12 O.S.Supp.1987, § 1289(B) within ninety days of that remarriage, the support alimony will not be reinstated upon the grounds that the second marriage was annulled based upon the fraud of both parties.

We find that the appellant was entitled to have the support alimony payments terminated upon appellee's remarriage. Appellant has petitioned this Court for reimbursement of all payments made pendente lite, and for attorney fees and costs. This case is remanded to the trial court for determination of those issues in a manner

not inconsistent with the holding of this Court.

REVERSED AND REMANDED.

HARGRAVE, C.J., and LAVENDER, DOOLIN and SUMMERS, JJ., concur.

OPALA, V.C.J., concurs in result.

HODGES, SIMMS and KAUGER, JJ., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent. Despite the majority's representation of its decision as being that an alimony recipient must commence an action within 90 days of remarriage for determination by the court that circumstances will dictate continuation of alimony, the real holding is that the subsequent marriage of appellant—in and of itself—is the unconditional ground for terminating support alimony. In so holding, the majority simply overrules 12 O.S.1981, § 1289(B) which provides that with proper circumstances, alimony may continue after even a valid remarriage. As an aside, I also do not agree with the majority's analysis of the import of our holding in *Acker v. Acker*, Okl., 594 P.2d 1216 (1979). To the contrary, I believe the clear implication of *Acker* is that there are circumstances which will extend the 90 day period within which to make application for a continuance of alimony payments.

In reaching its negative answer to the question framed in the first paragraph—"Is an ex-wife entitled to receive support alimony from her ex-husband after she has entered into a second marriage which was subsequently annuled?"—the court's reliance on out of state cases is misplaced. Those decisions did not involve application of a statute similar to 12 O.S.1981, § 1289, providing that alimony may be ordered to continue after marriage. Those cases are therefore not relevant to our situation, and do not provide a solid foundation for the majority's decision.

Appellee's remarriage was annulled before the end of the 90 day period and she was therefore not required to seek relief under § 1289(B). Under § 1289, the trial court clearly had the authority and discre-tion to rule as he did, and I would affirm that judgment.

I am authorized to state that Justice Kauger joins with me in the views expressed in this opinion.