ANTHONY J. KELLER *vs.* HELEN M. O'BRIEN.

Worcester. February 7, 1995. - July 24, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Divorce and Separation,* Alimony, Modification of judgment.

Discussion of statutes addressing the effect of a recipient spouse's remarriage on his or her right to alimony and of cases addressing that issue in States where no such legislation exists. [822-826]

This court held that, in a divorce matter, where neither the judgment nor any agreement between the parties addresses the issue, a recipient spouse's remarriage does not automatically terminate alimony, but rather makes a prima facie case that requires a court to terminate alimony unless the recipient spouse demonstrates extraordinary circumstances warranting its continuation. [826-828]

A matter was remanded to the Probate Court for further proceedings on whether extraordinary circumstances existed to warrant continuation of payments of alimony where the recipient spouse had remarried. [828-829]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on March 29, 1988.

A complaint for modification, filed on November 9, 1992, was heard by *Arline S. Rotman,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Seymour Weinstein (Barbara S. Liftman* with him) for the plaintiff.

*James F. Connors (Teresa Scibelli* with him) for the defendant.

LIACOS, C.J. This case involves the modification of an alimony judgment pursuant to G. L. c. 208, § 37 (1992 ed.). The parties were divorced on November 5, 1990. The judgment of divorce nisi required the plaintiff to pay the defend-

ant $500 a week in alimony and $300 a week in child support.[1] The judgment did not address whether alimony would terminate on the defendant's remarriage, nor was there any surviving agreement between the parties that addressed this issue.

On May 17, 1992, the defendant remarried. One month later, the plaintiff filed a complaint for modification seeking to terminate his alimony obligation because the defendant's remarriage constituted a material change of circumstances. An evidentiary hearing on the plaintiff's complaint was held in the Probate and Family Court on December 29, 1993. On February 15, 1994, the judge issued a judgment denying the plaintiff relief by dismissing his complaint. The plaintiff filed a timely appeal.[2] We granted his application for direct appellate review.

*Facts.* We recite the relevant facts found by the probate judge, as well as certain additional facts found by the judge who granted the judgment of divorce; these earlier findings were incorporated into the probate judge's findings of fact. The parties were married for twenty-six years prior to their divorce. During the marriage, the defendant stayed at home to raise their children. The plaintiff was a successful bank executive whose income in 1990, at the time of the divorce, was $158,327.12. In contrast, the defendant, who had com-

---

[1]At the time of the decree, a minor child of the parties resided with the defendant. On November 2, 1992, the plaintiff filed a complaint for modification seeking relief from his obligation to pay child support because the child had resided with the plaintiff since November 1, 1992. On December 17, 1992, a judge in the Probate and Family Court heard and allowed a motion for temporary orders granting the plaintiff temporary custody of the minor child and eliminating the child support obligation. This order is not a subject of this appeal.

[2]The probate judge also reserved and reported "the issue of whether Massachusetts law permits remarriage by an alimony recipient to be merely one factor that is considered in determining whether there has been a sufficient change in circumstances to economically justify a change in alimony and whether remarriage should give rise to any presumption." The Appeals Court consolidated this matter with the plaintiff's direct appeal. We need consider the matter solely on the basis of the appeal; we discharge the report.

pleted only two years of college prior to the marriage, had limited employability and was qualified for only unskilled, entry level positions at minimum wage.

After the divorce, the defendant found part-time employment as a medical assistant, with earnings of $90 a week. At the time of the modification hearing, her present spouse earned $28,000 per year, $7,800 of which he paid to a former wife as child support. The defendant's present spouse had a net take-home pay of $184.43 a week. He contributed $300 a month to the defendant's income tax expenses. The defendant had expenses of $588.81 per week, excluding income tax expenses on alimony payments received from the plaintiff. At the time of the modification hearing, the plaintiff's income had increased to more than $180,000. The value of his assets had increased substantially. He had weekly expenses of $1,527, including the $500 weekly alimony obligation.

The judge found that the defendant was still in need of support and that the plaintiff was still able to pay support. Further, the judge concluded that the defendant's remarriage did not amount to a sufficient change in her economic circumstances as would warrant a modification of the divorce judgment. Accordingly, the judge dismissed the plaintiff's complaint for modification. On appeal, the principal issues raised by the plaintiff are whether this court should adopt a rule automatically terminating alimony on the remarriage of the recipient spouse (in the absence of an agreement to the contrary), and whether the probate judge's finding that the defendant's remarriage and other factors did not constitute a material change of circumstances is clearly erroneous.

*Discussion.* General Laws c. 208, § 37, provides for modification of alimony awards, but does not specifically address whether remarriage requires the termination of alimony payments.[3] Although the statute does not make clear provision

---

[3] General Laws c. 208, § 37 (1992 ed.), provides in relevant part: "After a judgment for alimony or an annual allowance for the spouse or children, the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such

for the termination of the obligation to pay alimony on the recipient spouse's remarriage, this court has held that remarriage is prima facie evidence of a material change of circumstance which would warrant termination. See *Southworth* v. *Treadwell*, 168 Mass. 511, 513 (1897) (absent proof that support by new spouse was not adequate to all wife's needs, court could reduce alimony to nominal sum, effectively eliminating it).[4] We decide today whether, where not otherwise provided in the judgment of divorce or in an agreement between the parties, the obligation to pay alimony should terminate automatically on the recipient spouse's remarriage.[5]

Many jurisdictions have legislation addressing the effect of a recipient spouse's remarriage on his or her right to alimony. The majority of States have statutes providing that alimony payments automatically terminate on the recipient spouse's remarriage.[6] In those States that do not have stat-

---

alimony or annual allowance and the payment thereof, and may make any judgment relative thereto which it might have made in the original action."

We have held that, in order to obtain modification of a judgment for alimony, a petitioner must demonstrate a material change of circumstances since entry of the earlier judgment. See *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981).

[4]This court has affirmed the termination of alimony payments on the recipient spouse's remarriage where the parties included automatic termination provisions in an agreement found to survive the divorce judgment. See *Surabian* v. *Surabian*, 362 Mass. 342, 343-344 (1972).

[5]In resolving this issue, we focus on alimony only, and not on the issues raised when periodic payments constitute a property settlement or include sums for child support.

[6]Statutes providing for automatic termination of the obligation to pay alimony on the recipient spouse's remarriage fall into roughly three categories.

Seven States have statutes that provide for automatic termination immediately on remarriage of the recipient spouse. See La. Civ. Code Ann. art. 112 (A) (4) (West 1993); N.J. Stat. Ann. § 2A:34-25 (West Supp. 1994); N.C. Gen. Stat. § 50-16.9 (b) (1994); Pa. Cons. Stat. Ann. § 3701 (e) (1991); R.I. Gen. Laws § 15-5-16 (C) (Supp. 1994); S.C. Code Ann. § 20-3-150 (Law. Co-op. 1985); Tenn. Code Ann. § 36-5-101 (a) (2) (B) (Supp. 1994).

Three States have statutes providing for termination on petition to the court and proof of recipient spouse's remarriage. See Ala. Code § 30-2-55

utes that specifically address whether alimony payments should terminate on remarriage of the recipient spouse, statutes generally allow for modification of alimony obligations

(1989); N.Y. Dom. Rel. Law § 248 (McKinney 1986); Wis. Stat. Ann. § 767.32 (3) (West 1993).

Nineteen States have statutes providing for termination, unless otherwise agreed or provided. See Ariz. Rev. Stat. Ann. § 25-327 (B) (Supp. 1994) (unless otherwise agreed by the parties in writing or expressly provided in the decree); Ark. Code Ann. § 9-12-312 (a) (1) (Michie 1993) (unless otherwise ordered by the court or agreed to by the parties); Cal. Family Code § 4337 (West 1994) (unless otherwise agreed by the parties in writing); Colo. Rev. Stat. § 14-10-122 (2) (1987) (unless otherwise agreed in writing or expressly provided in the decree); Del. Code Ann. tit. 13, § 1519 (b)(1993) (unless otherwise agreed by the parties in writing and expressly provided in the decree); Ga. Code Ann. § 19-6-5 (b) (Michie 1991) (unless otherwise provided); Haw. Rev. Stat. § 580-51 (a) (1985) (unless otherwise provided by final decree or order, or by agreement of parties approved by the final decree or order); 750 Ill. Comp. Stat. Ann. ch. 750, § 5/510 (c) (Smith-Hurd Supp. 1995) (unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court); Ky. Rev. Stat. § 403.250 (2) (Michie Supp. 1994) (unless otherwise agreed in writing or expressly provided in the decree); Md. Fam. Law Code Ann. § 11-108 (1991) (unless the parties agree otherwise); Mich. Comp. Laws § 552.13 (2) (1981) (unless a contrary agreement is specifically stated in the judgment of divorce); Minn. Stat. § 518.64 (3) (1992) (unless otherwise agreed in writing or expressly provided in the decree); Mo. Ann. Stat. § 452.370 (3) (Vernon Supp. 1995) (unless otherwise agreed in writing or expressly provided in the decree); Mont. Code Ann. § 40-4-208 (4) (1993) (unless otherwise agreed in writing or expressly provided in the decree); Neb. Rev. Stat. § 42-365 (1993) (except as otherwise agreed by the parties in writing or by order of the court); Nev. Rev. Stat. § 125.150 (5) (1991) (unless otherwise ordered by the court); Utah Code Ann. § 30-3-5 (5) (Supp. 1994) (unless decree specifically provides otherwise); Va. Code Ann. § 20-109 (Michie 1994) (unless otherwise provided by stipulation or contract); Wash. Rev. Code § 26.09.170 (2) (1994) (unless otherwise agreed in writing or expressly provided in the decree).

West Virginia requires the court to provide in its decree whether alimony should terminate on the recipient spouse's remarriage. See W. Va. Code § 48-2-15 (g) (1995).

Oklahoma requires the court to provide in the decree that unaccrued alimony payments shall terminate upon the recipient spouse's remarriage. However, the statute allows alimony payments to continue in certain cases where the recipient commences an action within ninety days of remarriage and shows that support is still needed and that "circumstances have not rendered payment of the same inequitable." Okla Stat. tit. 43, § 134 (B) (Supp. 1994).

when changed circumstances warrant.[7] A small number of
States have statutes that, like G. L. c. 208, § 37, merely al-
low for modification and leave to the courts the determina-
tion as to when modification is appropriate.[8]

In States where legislation does not specifically address the
issue, the courts have had to determine by judicial decision
whether the recipient spouse's remarriage should terminate
the payor spouse's obligation to pay alimony. The majority of
those courts have held that the recipient spouse's remarriage
does not automatically terminate alimony, but that it creates
a strong presumption or a prima facie case that alimony will
cease in the absence of extraordinary circumstances.[9] In a

[7]See, e.g., Conn. Gen. Stat. § 46b-86 (b) (1993) (court can modify ali-
mony obligation where recipient spouse "is living with another person
under circumstances which the court finds should result in" modification
because living arrangements alter financial need of recipient spouse); Fla.
Stat. ch. 61.14 (1) (1993) (court can modify alimony obligation where
changed circumstances or changed financial ability of either party); Idaho
Code § 32-709 (1983) (court may modify alimony obligation where sub-
stantial and material change of circumstances); Iowa Code § 598.21 (8)
(1995) (court can modify alimony obligation where substantial change in
circumstances; remarriage is one factor for court to consider); Me. Rev.
Stat. Ann. tit. 19, § 721 (5) (West Supp. 1994) (court may modify ali-
mony obligation when it appears that justice requires it); N.M. Stat. Ann.
§ 40-4-7 (Michie 1994) (court may modify alimony obligation whenever
circumstances render such change proper); Vt. Stat. Ann. tit. 15, § 758
(1989) (court may modify alimony obligation where real, substantial, and
unanticipated change of circumstances).

[8]See, e.g., Alaska Stat. § 25.24.170 (1991); Miss. Code Ann. § 93-5-23
(1994); N.D. Cent. Code § 14-05-24 (1991); S.D. Codified Laws § 25-4-
41 (1992); Wyo. Stat. Ann. § 20-2-116 (West 1994).

[9]See, e.g., *Viglione* v. *Viglione,* 171 Conn. 213, 215 (1976) ("Periodic
alimony may be modified by the court upon a showing of a substantial
change in the circumstances of either party, and, except in the rarest of
situations, the remarriage of a [recipient spouse] will furnish the basis for
vacating such an award"); *Marriage of Lalone,* 469 N.W.2d 695, 698
(Iowa 1991) (presumption alimony will cease in absence of showing of ex-
traordinary circumstances); *Herzmark* v. *Herzmark,* 199 Kan. 48, 54
(1967) (proof of remarriage makes a prima facie case requiring termina-
tion of future alimony unless recipient proves extraordinary circumstances
justifying continuance); *Mitchell* v. *Mitchell,* 418 A.2d 1140, 1142-1143
(Me. 1980) (remarriage prima facie terminates the right to alimony); *Ea-
ton* v. *Eaton,* 90 N.H. 4, 7 (1939) (remarriage should terminate alimony
payments unless recipient spouse "can show extraordinary circumstances

few States, the courts have adopted an automatic termination rule.[10]

We believe the preferable rule is that, where not otherwise provided in the judgment of divorce or in an agreement between the parties, a recipient spouse's remarriage does not of itself automatically terminate alimony. Instead, the recipient

---

or a special situation making it clearly and definitely inequitable for the alimony to cease"); *Kuert* v. *Kuert*, 60 N.M. 432, 439 (1956) (alimony obligation should terminate unless recipient spouse proves extraordinary circumstances justifying continuance of former spouse's duty to support); *Ramsdell* v. *Ramsdell*, 454 N.W.2d 522, 524 (N.D. 1990) (remarriage is changed circumstance which calls for an end to spousal support, unless "extraordinary circumstances" require continuation); *Dunaway* v. *Dunaway*, 53 Ohio St. 3d 227, 232 (1990) (obligation to pay alimony terminates as matter of law upon remarriage of recipient spouse unless: [1] alimony constitutes property settlement; [2] payment is related to child support; or [3] parties have executed separation agreement in contemplation of divorce that expressly provides for continuation of sustenance alimony after recipient spouse remarries); *Steffens* v. *Peterson*, 503 N.W.2d 254, 258 (S.D. 1993) (remarriage does not automatically terminate alimony, but places burden of proving the existence of extraordinary circumstances warranting continuation of alimony payments on recipient spouse).

Some other courts have held that remarriage may be a change of circumstance, but have not gone so far as to state that it creates a strong presumption or prima facie case in favor of termination. See, e.g., *Swetich* v. *Smith*, 802 P.2d 869, 871 (Wyo. 1990) (remarriage may be a change of circumstance, but it does not automatically cancel obligation to pay alimony); *Coor* v. *Coor*, 155 Vt. 32, 35 (1990) (it is within trial court's discretion to order termination of maintenance payments should recipient cohabitate or remarry); *Marriage of Grove*, 280 Or. 341, 354-355, modified on other grounds, 280 Or. 769, 772 (1977) (statute does not require automatic termination of spousal support on remarriage; remarriage and effect on recipient spouse's financial status may constitute change of circumstances appropriate for modification).

[10]See *Voyles* v. *Voyles*, 644 P.2d 847, 849 (Alaska 1982) (recipient spouse's remarriage constitutes substantial change of circumstances which requires termination of alimony as matter of law). See also *Greene* v. *Greene*, 102 Idaho 891, 897 (1982) ("good housekeeping would suggest that when a recipient of alimony remarries, an appropriate order recognizing that fact, and the cessation of the alimony obligation, should be entered"); *Canakaris* v. *Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980) ("[a]s a general rule, permanent periodic alimony is terminated upon the . . . remarriage of the receiving spouse"); *East* v. *Collins*, 194 Miss. 281, 289 (1943) (wife's remarriage relieved former husband of all duty to support and maintain her thereafter).

spouse's remarriage makes a prima facie case which requires the court to end alimony, absent proof of some extraordinary circumstances, established by the recipient spouse, warranting its continuation.[11] This approach affirms the general principle that alimony should terminate on the recipient spouse's remarriage, but also allows courts to override this principle on evidence produced showing certain rare and exceptional circumstances. Under this prima facie approach, alimony would survive remarriage only in those rare situations which involve an on-going and legitimate need for continuation of alimony payments.[12] For example, if a remarried recipient spouse becomes a public charge, a judge may order the former spouse to continue making alimony payments. See O'Brien v. O'Brien, 416 Mass. 477, 480 (1993) (court may override separation agreement providing for termination of alimony "only to the extent necessary to prevent a former spouse from becoming a public charge"). Although this may burden the payor spouse, we believe that he or she should not be relieved of the obligation to pay alimony if the result would be to burden the taxpayers of this Commonwealth with support of the remarried recipient spouse.[13]

---

[11]For a discussion of "prima facie" evidence, see P.J. Liacos, Massachusetts Evidence § 5.8.3 — § 5.8.5, at 229-242 (6th ed. & Supp. 1994).

[12]We recognize that "the statutory authority of a court to award alimony [is] grounded in the recipient spouse's need for support and the supporting spouse's ability to pay." Gottsegen v. Gottsegen, 397 Mass. 617, 624 (1986). Thus, when a successor spouse is financially able to support the remarried recipient spouse, the former payor spouse should not be required to pay alimony unless the divorce decree or a surviving agreement between the parties provides otherwise. See O'Brien v. O'Brien, 416 Mass. 477, 481 (1993). The measurement of the successor spouse's ability to support the recipient spouse does not require that he or she provide the same lifestyle that the recipient spouse enjoyed during marriage to the payor spouse, or during the time when the recipient spouse was single and receiving alimony before remarriage.

[13]We need not speculate about what other circumstances might be sufficiently "extraordinary" as to warrant continuation of the obligation to pay alimony after the recipient spouse's remarriage. We note that other jurisdictions have found "extraordinary circumstances" not to exist where the husband obtained an education and achieved a successful career while the wife was a homemaker and cared for the couple's children, see Steffens v.

In so holding, we recognize that, except in extraordinary circumstances, it is "illogical and unreasonable" that a spouse should receive support from a current spouse and a former spouse at the same time. See *Marquardt* v. *Marquardt*, 396 N.W.2d 753, 754 (S.D. 1986); *Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985); *Bubar* v. *Plant*, 141 Me. 407, 410 (1945), quoting *Cary* v. *Cary*, 112 Conn. 256, 261 (1930). See also *Glazer* v. *Silverman*, 354 Mass. 177, 180 (1968) (court deemed it inequitable to allow wife to receive support from two former husbands). The new spouse does, after all, assume a duty to support on marriage. See *Bushnell* v. *Bushnell*, 393 Mass. 462, 467 (1984) ("duty of support arises out of the existence of a valid marriage"). See also *French* v. *McAnarney*, 290 Mass. 544, 546 (1935). We believe that "the remarriage should serve as an election between the support provided by the alimony award and the legal obligation of support embodied in the new marital relationship." *Voyles* v. *Voyles*, 664 P.2d 847, 849 (Alaska 1982). Absent extraordinary circumstances, the former spouse should not be required to pay alimony when another person has assumed the support obligation.

We generally defer to the probate judge's sound discretion in determining whether modification of an alimony judgment is appropriate. *Bush* v. *Bush*, 402 Mass. 406, 411 (1988). In this case, the judge found that the defendant's remarriage was not "a sufficient change in her economic circumstances to warrant a modification of the divorce judgment." How-

---

*Peterson, supra* at 256, 259; where wife did not show that successor husband was not able to support her, see *Marriage of Shima*, 360 N.W.2d 827, 829 (Iowa 1985); and where, without the alimony, wife was unable to live with successor husband in lifestyle to which she had become accustomed prior to remarriage, see *Bubar* v. *Plant*, 141 Me. 407, 411 (1945); *Eaton* v. *Eaton, supra* at 7. Contra *Peters* v. *Peters*, 214 N.W.2d 151, 158 (Iowa 1974) (where remarriage of former wife was not consummated and was annulled, it did not constitute a "remarriage" within decree provision terminating alimony on wife's remarriage). See also *Robbins* v. *Robbins*, 343 Mass. 247, 252 (1961) (payor spouse did not establish that recipient spouse's annulled remarriage resulted in change of circumstances that would justify modification of alimony obligation).

ever, it is not apparent from the record that the defendant satisfied her burden of showing that extraordinary circumstances warranted requiring her former husband to continue paying alimony. The mere fact that, without alimony, the defendant would not able to live with her second husband in the way in which she lived prior to her marriage to him is not a valid reason to continue alimony. Because we hold that a recipient spouse's remarriage makes a prima facie case which requires the court to terminate alimony unless some extraordinary circumstances are shown to warrant its continuation, we vacate the judgment of dismissal, discharge the report, and remand this case for further proceedings consistent with this opinion.

*So ordered.*