**2004 OK CIV APP 32**

**Barbara L. MATHIS, Plaintiff/Appellant,**

v.

**Billy J. MATHIS, Defendant/Appellee.**

**No. 98,154.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 17, 2004.

William E. Liebel, Oklahoma City, OK, for Appellant.

Allan Campbell, Kirk & Chaney, Oklahoma City, OK, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Plaintiff/Appellant Barbara L. Mathis (Wife or Ex–Wife) seeks review of the trial court's order denying her application to continue support alimony after her marriage to Dan Bales (Husband).  In this proceeding, Wife asserts the trial court erred as a matter of both fact and law, and abused its discretion in denying her continued support alimony from Defendant/Appellee Billy J. Mathis (Ex–Husband).

¶ 2 After a twenty-two year marriage, the parties divorced in the fall of 2001.  Husband was ordered to pay Wife gross support alimony of $1,244,446.00 over ten years on terms that netted Wife after taxes the total sum of $780,000.00 to be paid: $10,000.00 net after tax per month for twenty-four (24) months; $7,500.00 net after tax per month for the following twenty-four (24) months; and, $5,000.00 net after tax per month for the following seventy-two (72) months. The decree of divorce also provided for termination of Wife's support upon her remarriage or death of either party.

¶ 3 On March 30, 2002, Wife remarried. Within ninety (90) days of her remarriage, Wife applied for a continuation of support alimony pursuant to 43 O.S. § 134(B).

¶ 4 At the hearing on the merits covering parts of two days, the parties stipulated that the income and expenses of both Wife and Ex–Husband were not materially different than what they were at the time of the divorce only a few months before.  Wife introduced evidence that Ex–Husband realized after-tax monthly income of $225,349.00. The evidence also showed that prior to the marriage, Wife's new Husband had voluntari-

ly left the banking business after twenty-eight (28) years, a business in which he had earned over $100,000.00 per year plus bonuses, and accumulated an estate with a net worth exceeding $600,000.00. The evidence also showed that Husband's current income—from his employment as a full-time fitness instructor and part-time business consultant[1]—was insufficient to contribute to Wife's necessary living expenses. Bales testified he suffered no mental or physical disability which would prevent him from working in any capacity he chose.

¶5 Upon consideration of the stipulations, evidence, argument and briefs of the parties, the trial court held Wife's support alimony terminated upon her remarriage because her new Husband "is capable of earning a living and supporting [her]." In this appeal, Wife asserts the stipulations and uncontroverted evidence demonstrated her continued need for some support from Ex-Husband, and, considering Ex-Husband's monthly income, the circumstances did not render payment of the continued support inequitable.

¶6 Before 1965, alimony judgments in Oklahoma were considered final and not modifiable. See, e.g., Gilcrease v. Gilcrease, 1939 OK 532, ¶0, 98 P.2d 906. The reason for this finality was because the award of support alimony was a "matter of sound judicial discretion to be exercised in accord with established principles and in view of the circumstances of each particular case" "at the time of the divorce." Bishop v. Bishop, 1944 OK 180, ¶5, 148 P.2d 472, 474; Bowen v. Bowen, 1938 OK 105, ¶13, 76 P.2d 900, 902. In awarding alimony, the courts looked to various factors, particularly, need and ability to pay, "as the court may deem just and equitable." 12 O.S.1961 § 1278. Branson v. Branson, 1942 OK 77, ¶0(6), 123 P.2d 643.[2]

¶7 Consequently, an award of support could not be modified because of "changes in the circumstances of the parties." Bishop, 1944 OK 180, ¶5, 148 P.2d at 474. And, certainly, "in no case d[id] the husband have the right to modification of an alimony judgment, ... on account of remarriage of his wife to another man." Gilcrease, 1939 OK 532, ¶10, 98 P.2d at 907. This was so, even when, at the time of entering the decree, the trial court had ordered alimony to cease if wife remarried. Bishop, 1944 OK 180, ¶7, 148 P.2d at 475.

¶8 In 1965, the Legislature began the process of radically changing this policy. That year, it enacted 12 O.S. Supp.1965 § 1289(b) which provided:

In a divorce decree which provides for periodic payments of alimony, the Court *may*, in its discretion, declare that the obligation to pay future installments *automatically* ceases on the death or remarriage of the person receiving alimony.

(Emphasis added.) Two years later, the Legislature amended § 1289 to *mandate* termination of spousal support upon remarriage of the recipient, but added a provision permitting the post-remarriage continuation of support upon an application filed within ninety days of remarriage and "a proper showing that said support is still needed and that circumstances have not rendered payment of the same inequitable." 12 O.S. Supp.1967 § 1289(b). This provision, essentially unchanged over the years, but as renumbered, now provides:

The court shall ... provide in the divorce decree that upon the death or remarriage of the recipient, the payments for support, if not already accrued, shall terminate. .... Upon proper application the court shall order payment of support terminated and the lien discharged after re-

---

1. As a fitness instructor, Husband testified he trains 5–6 people per day, 5 days per week, and earns $25–$45 per hour for his services.

2. "There is no fixed standard or formula by which the amount of alimony is determined in a suit for alimony with or without divorce, however the courts do frequently enumerate some of the factors that should enter into consideration of the question and, without referring exclusively to either one of the spouses, have included in such enumerations the financial circumstances of the parties; reference in some instances to their incomes and necessities; the contributions of each to the accumulated property; their probable future prospects; their sex, age, health; their station in life; their children, if any; the duration of the marriage and the wife's, as well as the husband's, capacity or lack of capacity to earn."

marriage of the recipient, *unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable, provided the recipient commences an action for such determination, within ninety (90) days of the date of such remarriage.*

43 O.S. § 134(B). (Emphasis added.)

¶ 9 With the development of § 1289(b) and § 134(B), support alimony judgments have undergone a remarkable metamorphosis. What started out as an *absolutely final* judgment, *not* modifiable or terminable regardless of the remarriage of the recipient, grew into a judgment which *might* terminate upon remarriage at the discretion of the court, and matured into a judgment which *absolutely* terminated upon remarriage, *unless* the recipient commenced an action within ninety days to show continued need and no change of circumstance rendering continued payment *inequitable.*

¶ 10 Over the years, the Oklahoma appellate courts have had only a few occasions to examine the reach of § 1289(b) and § 134(B).[3] Ex–Husband argued that *Overton v. Overton,* 1978 OK CIV APP 16, 578 P.2d 1216, and *Kildoo v. Kildoo,* 1989 OK 6, 767 P.2d 884, governed this case and made clear the *only* relevant inquiry concerning the continuation of support alimony after remarriage is whether new husband is capable of providing *any* support.

¶ 11 In *Overton,* the Court of Appeals opined:

. . . . The legislation rest[s] on the assumption that ordinarily a woman would no longer need to be supported by her former husband if she remarried because of the new husband's obligation to support her. Just in case, however, the unforeseeable occurred and the later husband for some reason *could not support her,* the statute empowered the court to grant the woman post-remarriage relief but only during a three month period. The emphasis of the

statute is on the existence of an alimony recipient's need for support during the immediate post-remarriage period. If under normal circumstances, for example, economic disaster does not descend upon the woman until four months after remarriage the court is powerless to reinstate an earlier terminated alimony provision.

. . . .

. . . . [T]he statute's *unusual* grant of post-remarriage relief is a concession to the remote chance of unusual circumstances. . . . .

1978 OK CIV APP 16, ¶¶ 3, 5, 578 P.2d at 1217. (Emphasis added.) In *Kildoo,* the Supreme Court observed:

. . . . "The interests of justice require . . . that, as between successive husbands, the wife look to the last one for support, and, certainly, that she be given neither two sources of support nor the ability to choose between her first and second husbands for the more profitable."

1989 OK 6, ¶¶ 7, 767 P.2d at 885–886. Thus, argues Ex–Husband, if the new husband is capable of providing *any* support to the recipient wife, support alimony must be terminated, and whether the new husband is capable of supporting the ex-Wife to the same degree as ex-husband's support alimony is irrelevant.

¶ 12 In the present case, the trial court agreed with ex-husband, reasoning *Overton* and *Kildoo* dictated the result, and held that "alimony cannot continue because Mr. Bales . . . . is capable of earning a living and supporting" Wife. However, we believe the trial court's reliance on these cases is misplaced.

¶ 13 *Kildoo* dealt with whether the annulment of the recipient spouse's second marriage (for fraud by both parties) affected previously awarded alimony. "Agreed annulments grounded upon fraud by both parties as a basis for receiving alimony payments from a previous spouse is a cause for concern to this Court," and, "where the annulment

---

3. *See, e.g., Perry v. Perry,* 1976 OK 57, 551 P.2d 256; *Stuart v. Stuart,* 555 P.2d 611; *Acker v. Acker,* 594 P.2d 1216. *Perry* and *Stuart* dealt with the question of whether the parties could, by agreement, waive statutory provisions for ter- mination of support and permit continuation of support after remarriage. *Acker* held that support terminated unless an action was commenced within ninety days of remarriage.

was based upon fraud, the majority view appears to be that alimony will not be reinstated." *Kildoo*, 1989 OK 6, ¶¶ 5, 7, 767 P.2d at 885. Whether to reinstate alimony after an annulment is a question legally and factually distinguishable from the issue in the present case.

¶ 14 More importantly, the decisions in both *Overton* and *Kildoo* turned on the effect of the support recipient's *failure* to timely apply for the continuation of support after remarriage, and in both cases, the appellate courts held such failure fatal to relief. Consequently, any discussion in those cases concerning the circumstances under which support alimony might continue after remarriage must be regarded as mere dicta.

¶ 15 Since here, there is no question concerning timeliness of Wife's application in the present case, we are presented with a first impression question: under what circumstances may a court order support alimony to continue after remarriage of the recipient spouse?

¶ 16 "Fundamental to statutory construction is to ascertain and give effect to legislative intent." *Humphries v. Lewis*, 2003 OK 12, ¶ 7, 67 P.3d 333, 335. In this task, we are guided by the language of the statute. *Id.*

¶ 17 While Oklahoma appears to be the lone state which, *by specific statutory provision,* allows the continuation of support alimony after remarriage, our statutory experience after 1965 mirrors the development of the law in other states. Our review of the decisions from other jurisdictions reveals essentially three approaches to the effect of remarriage on support alimony awards.

¶ 18 A few courts hold that remarriage automatically terminates support alimony.

*See, e.g., Keller v. Keller,* 130 Idaho 661, 946 P.2d 623 (1997); *East v. East,* 493 So.2d 927 (Miss.1986); *Voyles v. Voyles,* 644 P.2d 847 (Ak.1982). In *Voyles,* for instance, the state supreme court adopted a policy of automatic termination based on the presumption that the subsequent marriage will provide adequate support to the recipient spouse. 644 P.2d at 849.[4]

¶ 19 The great majority of jurisdictions,[5] however, hold that an automatic termination rule is too rigid and does not account for all circumstances which might arise after remarriage of the recipient spouse. But after that, courts follow two different approaches.

¶ 20 Under the first approach, some courts take the view that remarriage constitutes a change of circumstance which may or may not require termination. Under this view, remarriage is but one of many factors to be considered, and the payor spouse bears the burden to show alimony is no longer needed. *See, e.g., Swetich v. Smith,* 802 P.2d 869, 871 (Wyo.1990); *Bates and Bates,* 303 Or. 40, 733 P.2d 1363, 1366 (1987).[6] As the Oregon appellate court noted:

> [Oregon statute permits] the modification or termination of a spousal support award when there has been a substantial change in the parties' economic circumstances. [R]emarriage may result in such a change. However, nothing in the statute suggests that the economic effects of remarriage should be treated differently than any other change of circumstances.

*Matter of Marriage of Fouts,* 98 Or.App. 483, 779 P.2d 145, 146 (1989).

¶ 21 Under the second approach, other courts hold that while remarriage may not

---

4. "Because there is a legal obligation of support embodied in the new marital relationship, the obligation of support from the past marital relationship should end. While the legal obligation of support is not the equivalent of actual support, the court will presume from the fact of remarriage that adequate support for the necessities of living will be provided to the dependent spouse through the new marriage. In this way, we avoid constant judicial intrusion into the new marital home to determine if sufficient support exists to constitute a substantial change of circumstances requiring termination of alimony."

5. Contrary to the *Overton* characterization of § 134's "*unusual* grant of post-remarriage relief." (Emphasis added.)

6. "[R]emarriage of the supported spouse may represent a change in circumstances; as we have pointed out, however, it will not automatically terminate a spousal support award. This is so because remarriage of a supported spouse will not always supplant the purposes behind the initial award. Support should be terminated when the purposes of the initial award have been met."

**666**

automatically terminate support alimony, re-marriage establishes a prima facie case for termination or modification, and in these jurisdictions, the *recipient* bears the burden to demonstrate *extraordinary* circumstances mandating continuation of support alimony. *See, e.g., Matter of Marriage of Quint,* 258 Kan. 666, 907 P.2d 818 (1995); *In re Marriage of Shima,* 360 N.W.2d 827, 828 (Iowa 1985); *Nugent v. Nugent,* 152 N.W.2d 323 (N.D.1967). As the South Dakota Supreme Court summarized:

> "Proof that the spouse receiving spousal support payments has remarried establishes a prima facie case requiring the court to terminate the support payments unless there are extraordinary circumstances which justify continuance of the payments." .... "[W]hile the subsequent remarriage of a spouse does not result in automatic termination of an alimony obligation, it shifts the burden to the recipient to show that extraordinary circumstances exist which require the continuation of the alimony payments." .... Sound public policy abounds to support this holding. South Dakota law places a statutory duty on one spouse to support the other.....

*Marquardt v. Marquardt by Rempfer,* 396 N.W.2d 753, 756 (S.D.1986).

¶ 22 This second view appears the closest to the § 134(B) regime because: (1) our statute clearly envisions termination after remarriage in ordinary circumstances; (2) the statute places the burden on the recipient to demonstrate grounds for continuation; and (3) 43 O.S. §§ 201 [7] and 202 [8] require spouses to support each other, and thus, reflect Oklahoma's strong public policy favoring support by the current husband. We therefore hold that § 134(B) contemplates the continuation of support alimony after the recipient's remarriage only in unusual or "extraordinary" circumstances.

¶ 23 Having so held, the next question becomes, what circumstances may be considered extraordinary? Some courts take the view that nothing short of economic disaster is sufficient. In *Keller v. O'Brien,* 420 Mass. 820, 652 N.E.2d 589 (1995), the court found that remarriage did not automatically terminate support:

> Instead, the recipient spouse's remarriage makes a prima facie case which requires the court to end alimony, absent proof of some extraordinary circumstances, established by the recipient spouse, warranting its continuation. This approach affirms the general principle that alimony should terminate on the recipient spouse's remarriage, but also allows courts to override this principle on evidence produced showing certain *rare and exceptional circumstances.* Under this prima facie approach, alimony would survive remarriage only in those rare situations which involve an on-going and legitimate need for continuation of alimony payments. *For example, if a remarried recipient spouse becomes a public charge, a judge may order the former spouse to continue making alimony payments.* Although this may burden the payor spouse, we believe that he or she should not be relieved of the obligation to pay alimony if the result would be to burden the taxpayers of this [state] with support of the remarried recipient spouse.

> In so holding, we recognize that, except in extraordinary circumstances, it is *"illogical and unreasonable" that a spouse should receive support from a current spouse and a former spouse at the same time.* The new spouse does, after all, assume a duty to support on marriage. We believe that "the remarriage should serve as an election between the support provided by the alimony award and the legal obligation of support embodied in the new marital relationship." *Absent extraordinary circumstances,* the former spouse should not be required to pay alimony when another person has assumed the support obligation.

**7.** "Husband and wife contract towards each other obligations of mutual respect, fidelity and support."

**8.** "The husband must support himself and his wife out of the community property or out of his separate property or by his labor. The wife must support the husband when he has not deserted her out of the community property or out of her separate property when he has no community or separate property and he is unable from infirmity to support himself."

.... The mere fact that, without alimony, the defendant would not be able to live with her second husband in the way in which she lived prior to her marriage to him is not a valid reason to continue alimony.

652 N.E.2d at 593–594. (Citations omitted.) (Emphasis added.)

¶ 24 In *Nugent,* wife contended alimony should continue "because she would not be able without it to live with her second husband in the way in which she lived while married to" her first husband. 152 N.W.2d at 328. The state supreme court expressly found these "facts do not constitute such extraordinary circumstances as would justify the continuance of the alimony or support payments." 152 N.W.2d at 328.

¶ 25 Clearly, in these jurisdictions, the recipient spouse's desire for continued support alimony because her new husband cannot provide support at her accustomed level would not be considered "extraordinary" and "a valid reason to continue alimony," because it is generally against public policy to require one man to support the wife of another, who has himself assumed the legal obligation of spousal support. *Keller,* 652 N.E.2d at 594; *Marquardt,* 396 N.W.2d at 756.

¶ 26 However, in other jurisdictions which apply the extraordinary circumstance test, the great disparity in income between the first and second husbands may be enough to justify continuation of the support alimony obligation after remarriage of the recipient spouse. As the Iowa appellate court observed:

> In the case at bar, the former husband's net taxable annual income is $220,000. The current husband's income is $30,000. The wife cannot support herself with the support she receives from her new husband in the manner of the life style established in the previous marriage. We find the wife has established the required record to prove extraordinary circumstances requiring continuation of alimony.....

*In re Gillilland,* 487 N.W.2d 363, 366 (Iowa App.1992).

¶ 27 So, in Oklahoma, is a showing that the new husband does not support wife at a level comparable to her support alimony sufficient to meet the recipient spouse's burden to show "extraordinary" circumstances requiring a continuation of alimony? We conclude that it is not. We agree with *Nugent,* that a spouse does not show extraordinary circumstances under § 134(B) simply by showing she cannot continue the same life style in her new marriage that she experienced as a result of receiving support alimony. This is the essence of Wife's argument, which we reject. Wife did not therefore sustain her burden under § 134(B).

¶ 28 In this case, the trial court found *Kildoo* and *Overton* controlling and looked *solely* to whether Ex–Wife's new Husband was capable of earning a living and supporting her. Based on our analysis, we believe this standard is too narrow. However, we affirm the trial court because it reached the correct result. *See, e.g., Shelley v. Kiwash Elec. Co-op., Inc.,* 1996 OK 44, ¶ 16, 914 P.2d 669, 674.

¶ 29 The order of the trial court is therefore AFFIRMED.

ADAMS, P.J., and BUETTNER, V.C.J., concur.